IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 19-510 T

(Judge Edward H. Meyers)

PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

ARMANDO GOMEZ
*Counsel of Record for Plaintiff*

DAVID W. FOSTER
JACLYN ROEING
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, NW
Washington, D.C. 20005

# TABLE OF CONTENTS

I.      STATEMENT OF ISSUE.................................................................................1

II.     INTRODUCTION ........................................................................................1

III.    STANDARD OF REVIEW ............................................................................2

IV.     STATEMENT OF FACTS .............................................................................3

V.      ARGUMENT ...............................................................................................11

        A.      The plain language of section 6426 confirms that butane is an "alternative fuel" for purposes of the alternative fuel mixture credit.......................................12

                1.      Statutory framework ...............................................................12

                2.      Statutory construction begins with a consideration of the plain language of the statute ..............................................................12

                3.      Section 6426 is clear and unambiguous:  butane is a liquefied petroleum gas, and therefore butane is an alternative fuel for purposes of the alternative fuel mixture credit ...........................................13

        B.      Though the scheme in which a statute appears may provide insight for interpreting the statute, the statutory context outside of section 6426 does not dislodge the plain language of section 6426 that butane is a liquefied petroleum gas and, therefore, an alternative fuel ..................................................18

        C.      The Court's inquiry ends when the language of a statute is clear ........................25

        D.      The factors that would allow the Court to continue its inquiry beyond the plain meaning of a statute are not present here.......................................26

                1.      Legislative history for section 6426 does not reveal extraordinary evidence of a contrary congressional intent to the plain language of the statue and cannot be considered...........................................27

                2.      The plain language of section 6426 does not lead to an absurd result that would allow the Court to look beyond the statutory text...........30

                        (a)     The fact that butane can be characterized as both an alternative fuel and a taxable fuel is not absurd...........................31

                        (b)     The fact that butane is present in crude and present in some produced gasoline is not absurd....................................37

VI.     CONCLUSION.............................................................................................40

# TABLE OF AUTHORITIES

## CASES

*AD Global Fund, LLC ex rel. North Hills Holding, Inc. v. United States*,
  67 Fed. Cl. 657 (2005), *aff'd*, 481 F.3d 1351 (Fed. Cir. 2007)..........................................29

*Anderson v. Commissioner*,
  123 T.C. 219 (2004), *aff'd*, 137 F. App'x 373 (1st Cir. 2005) ..........................................24

*Bostock v. Clayton County, Georgia*,
  140 S. Ct 1731 (2020)..........................................................................................................30

*Buckeye Power Inc. v. United States*,
  33 Fed. Cl. 154 (1997) .........................................................................................................18

*Caminetti v. United States*,
  242 U.S. 470 (1917)..............................................................................................................25

*Centex Corp. v. United States*,
  48 Fed. Cl. 625 (2001) .........................................................................................................26

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994)..............................................................................................................29

*Chrysler Corp. v. Brown*,
  441 U.S. 281 (1979)..............................................................................................................29

*In re City of Houston*,
  731 F.3d 1326 (Fed. Cir. 2013)......................................................................................19, 27

*Connecticut National Bank v. Germain*,
  503 U.S. 249 (1992)........................................................................................................11, 25

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974)..............................................................................................................14

*Dana Corp. v. United States*,
  174 F.3d 1344 (Fed. Cir. 1999)..............................................................................................3

*Eaglehawk Carbon, Inc. v. United States*,
  122 Fed. Cl. 209 (2015) ..................................................................................................13, 19

*Executive Jet Aviation, Inc. v. United States*,
  125 F.3d 1463 (Fed. Cir. 1997)........................................................................................31, 37

*Gitlitz v. Commissioner*,
    531 U.S. 206 (2001) .................................................................................25

*Graham County Soil & Water Conservation District v. United States ex rel. Wilson*,
    559 U.S. 280 (2010) .................................................................................29

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982) .............................................................................25, 31

*Hanover Bank v. Commissioner*,
    369 U.S. 672 (1962) .................................................................................18

*Johnson v. United States*,
    529 U.S. 694 (2000) .................................................................................11

*Lamie v. U.S. Trustee*,
    540 U.S. 526 (2004) .................................................................................30

*In re Michigan BioDiesel, LLC*,
    466 B.R. 413 (W.D. Mich. 2011) ............................................................33

*Moskal v. United States*,
    498 U.S. 103 (1990) .................................................................................13

*Natale v. East Coast Salon Services, Inc.*,
    No. 13-1254, 2016 WL 659722 (D.N.J. Feb. 18, 2016) ..........................16

*National Union Fire Insurance Co. of Pittsburgh, Pennsylvania  v.
    ExxonMobil Gas & Power Manufacturing Co.*,
    691 F. App'x 195 (5th Cir. 2017) (per curiam) (mem.)............................17

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) .................................................................................13

*Rowan Cos. v. United States*,
    452 U.S. 247 (1981) .................................................................................18

*Sandifer v. U.S. Steel Corp.*,
    571 U.S. 220 (1990) .................................................................................14

*Santa Fe Pacific Railroad Co. v. United States*,
    294 F.3d 1336 (Fed. Cir. 2002) .................................................................3

*Shamrock Oil & Gas Corp. v.Commissioner*,
    35 T.C. 979 (1961), *aff'd*, 346 F.2d 377 (5th Cir. 1965),
    *acq.* 1966-2 C.B. 7 ...................................................................................17

*Sturges v. Crowinshield*,
    17 U.S. (4 Wheat.) 122 (1819)........................................................................30

*Sunoco, Inc. v. United States*,
    908 F.3d 710 (Fed. Cir. 2018)........................................................................27

*United States v. Byrum*,
    408 U.S. 125 (1972)........................................................................................25

*United States v. Menasche*,
    348 U.S. 528 (1955)........................................................................................21

*U.S. Venture, Inc. v. United States*,
    No. 20-1861, ECF No. 23 (7th Cir. Oct. 2, 2020) ....................................15, 20

*U.S. Venture, Inc. v. United States*,
    Nos. 1:18-cv-01757, 1:19-cv-00595, ECF No. 80 (E.D. Wisc. Mar. 23, 2020),
    *appeal docketed*, No. 20-1861 (7th Cir. May 21, 2020)..................................15

*Vitol, Inc. v. United States*,
    No. 20-20237, Brief of Valero Marketing & Supply Co. as *Amicus Curiae*
    Supporting Appellant (5th Cir. July 27, 2020) ...................................................35

*Vitol, Inc. v. United States*,
    No. 20-20237, ECF No. 19 (5th Cir. Sept. 10, 2020) .................................20, 39

*Vitol, Inc. v. United States*,
    No. 4:18-cv-02275, ECF No. 58-1 (S.D. Tex. Jan. 8, 2020) ...........................16

*Vitol, Inc. v. United States*,
    No. 4:18-cv-02275, ECF No. 73 (S.D. Tex. Feb. 25, 2020), *report and*
    *recommendation adopted by* ECF No. 75 (S.D. Tex. Mar. 24, 2020),
    *appeal docketed*, No. 20-20237 (5th Cir. May 1, 2020)............................15, 17

*Williams v. Taylor*,
    529 U.S. 420 (2000)........................................................................................12

*Xerox Corp. v. United States*,
    41 F.3d 647 (Fed. Cir. 1994)....................................................................13, 14

*Xianli Zhang v. United States*,
    640 F.3d 1358 (Fed. Cir. 2011)................................................................13, 24

*Yarish v. Commissioner*,
    139 T.C. 290 (2012)........................................................................................23

# S<small>TATUTES</small>

15 U.S.C. §§ 6401–6411 (Title 90, Propane Education and Research) ........................................24

26 U.S.C. § 25C ...........................................................................................................................24

26 U.S.C. § 40A ...........................................................................................................................33

26 U.S.C. § 45K ...........................................................................................................................35

26 U.S.C. § 4041 ..............................................................................................................20, 21, 28

26 U.S.C. § 4081 ...................................................................................................................... *passim*

26 U.S.C. § 4083 ...................................................................................................................... *passim*

26 U.S.C. § 6110 ....................................................................................................................16, 18

26 U.S.C. § 6426 ...................................................................................................................... *passim*

26 U.S.C. § 9503 ...........................................................................................................................20

42 U.S.C. § 16091 .........................................................................................................................24

American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 ................................19

American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, 126 Stat. 2313 (2013) .................22

Bipartisan Budget Act of 2018, Pub. L. No. 115-123, 132 Stat. 64 .............................................22

Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242 (2015) .................22

Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, 133 Stat. 2534 (2019) ..................22

Crude Oil Windfall Profit Tax Act of 1980, Pub. L. No. 96-223, 94 Stat. 229 ...........................39

Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 ..............22

Pub. L. No. 95-617, 92 Stat. 3117 (1978) ....................................................................................19

Safe, Accountable, Flexible, Efficient Transportation Equity Act:
    A Legacy for Users, Pub. L. No. 109-59, 119 Stat. 1144 (2005) .....................................22

Tax Increase Prevention Act of 2014, Pub. L. No. 113-295, 128 Stat. 4010 ...............................22

Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010,
  Pub. L. No. 111-312, 124 Stat. 3296 .........................................................................22, 23

## REGULATIONS

40 C.F.R. § 80.82 ..........................................................................................................8, 38

Treas. Reg. § 1.7704-4 ........................................................................................................17

Treas. Reg. § 1.907(c)-1 ......................................................................................................17

Temp. Treas. Reg. § 1.927(a)-1T .........................................................................................17

Treas. Reg. § 1.993-3 ..........................................................................................................17

Treas. Reg. § 48.4041-8 ................................................................................................17, 20

Treas. Reg. § 48.4081-1 ............................................................................................. *passim*

## LEGISLATIVE HISTORY

H.R. Rep. No. 109-203 (2005) (Conf. Rep.)..........................................................................28

Staff of the Joint Comm. on Taxation, 96th Cong., General Explanation
  of the Crude Oil Windfall Profit Tax Act of 1980 (JCS-1-81)
  (Comm. Print Jan. 29, 1981) ..............................................................................................39

Staff of the Joint Comm. on Taxation, 109th Cong., Description of the
  "Energy Policy Tax Incentives Act of 2005" (JCX-44-05) (Comm. Print)......................28

Staff of the Joint Comm. on Taxation, 110th Cong., General Explanation
  of Tax Legislation Enacted in the 109th Congress (JCS-1-07)
  (Comm. Print Jan. 17, 2007) ..............................................................................................28

## OTHER AUTHORITIES

ASTM International, D1835-20, *Standard Specification for Liquefied Petroleum (LP)*
  *Gases* § 1.1, https://www.astm.org/Standards/D1835.htm
  (last visited Nov. 12, 2020).................................................................................................15

Caroline Burgess Clifford, Penn State College of Earth & Mineral Sciences,
  *Lesson 8.5 Fischer-Tropsch Process to Generate Liquid Fuels*,
  https://www.e-education.psu.edu/egee439/node/679 (last visited Nov. 11, 2020)............36

Encyclopedia Britannica, https://www.britannica.com/science/butane
  (last visited Nov. 11, 2020).................................................................................................4

G. Tyler Miller, *Environmental Science* (4th ed. 1993) ...................................................14

G. Tyler Miller, *Living in the Environment* (4th ed. 1993).............................................15

Internal Revenue Manual 4.10.7.2.10(4) (2006)..................................................................18

Internal Revenue Manual 21.7.8.4.1.4.4.10 (2009) .............................................................17

I.R.S. C.C.A. 200941011 (June 3, 2009) ..............................................................................23

I.R.S. C.C.A. 201144024 (Nov. 4, 2011)..............................................................................34

I.R.S. L.A.F.A. 20151001F (Dec. 10, 2014).........................................................................16

I.R.S. Notice 2007-37, 2007-1 C.B. 1002........................................................................33, 34

I.R.S. P.L.R. 6007053230A (July 5, 1960)...........................................................................17

I.R.S. T.A.M. 6007058570A (July 5, 1960) .........................................................................18

James E. Girard, *Principles of Environmental Chemistry* (3d ed. 2013).......................................14

*Liquefied petroleum gas*, Merriam-Webster.com, https://www.merriam-
webster.com/dictionary/liquefied%20petroleum%20gas ............................................................14

McGraw-Hill Dictionary of Scientific and Technical Terms (6th ed. 2003)................................14

*Mixture*, Dictionary.com, https://www.dictionary.com/browse/mixture?s=t ...............................33

PubChem, https://pubchem.ncbi.nlm.nih.gov/compound/Butane
    (last visited Nov. 11, 2020)......................................................................................4

RCFC 56 ................................................................................................................2

Rev. Rul. 2018-2, 2018-2 I.R.B. 277 ..................................................................................10

U.S. Energy Information Administration,
    https://www.eia.gov/tools/glossary/index.php?id=L (last visited Nov. 11, 2020) ...........15

U.S. Energy Information Administration, *Biomass Explained*,
    https://www.eia.gov/energyexplained/biomass/ (last updated Aug. 28, 2020) ................35

U.S. Energy Information Administration,

Petroleum and Other Liquids, *Supply and Disposition of Crude Oil and Petroleum Products*, https://www.eia.gov/dnav/pet/pet_sum_snd_d_nus_mbblpd_a_cur-5.htm (release date Oct. 30, 2020) ............................................................................................20

U.S. Environmental Protection Agency, *Bio-Based Products and Chemicals, Waste-to-Energy Scoping Analysis U.S. Environmental Protection Agency Office of Resource Conservation and Recovery* (Apr. 2015), https://www.epa.gov/sites/production/files/2015-12/documents/bio-based_products_and_chemicals_waste-to-energy_scoping_analysis_ 04032015_508.pdf .............................................................................................35

I.    STATEMENT OF ISSUE

Whether butane is a liquefied petroleum gas and, therefore, an "alternative fuel" for purposes of the alternative fuel mixture credit under section 6426(e) of the Internal Revenue Code (the "Code").[1]

II.   INTRODUCTION

This is a federal excise tax refund case in which Plaintiff Philadelphia Energy Solutions Refining and Marketing, LLC ("Plaintiff") is seeking alternative fuel mixture tax credits under section 6426(e).  The alternative fuel mixture credit is generally available to producers of "alternative fuel mixtures," which are fuel mixtures that include an "alternative fuel" and a "taxable fuel."  "Alternative fuel" is defined by section 6426 to include liquefied petroleum gas. § 6426(d)(2)(A).  "Taxable fuel" is defined to include gasoline.  § 6426(e)(2) (cross-referencing section 4083(a)(1)).  Plaintiff is seeking the alternative fuel mixture credit for a mixture of liquefied petroleum gas, an alternative fuel, with gasoline, a taxable fuel.  Specifically, Plaintiff used butane, a type of liquefied petroleum gas, to produce an alternative fuel mixture (the "Butane/Gasoline Mixture").  Plaintiff seeks the alternative fuel mixture credit for the four taxable quarters in 2014, 2015, 2016, and 2017 (collectively, the "Taxable Quarters at Issue").

Section 6426 establishes three additional requirements that a taxpayer must meet to qualify for the alternative fuel mixture credit: the taxpayer must use the alternative fuel mixture as a fuel in its trade or business, or sell such mixture for use as fuel; the taxpayer must incur excise tax liability under section 4081, and the amount of the credit will be limited to the section

---

[1]    Unless indicated otherwise, all statutory references are to Title 26 of the United States Code, the Internal Revenue Code, as in effect for the periods at issue.  All capitalized terms not defined herein have the meanings set forth in the Amended Complaint as if fully set forth in this memorandum.

4081 liability; and the taxpayer must be registered with the Internal Revenue Service (the "Service") pursuant to section 4101.  § 6426(a), (e).  The amount of the alternative fuel mixture credit is 50 cents multiplied by the number of gallons of alternative fuel used to produce the alternative fuel mixture.  § 6426(e)(1).

This motion seeks partial summary judgment that, consistent with the plain language of section 6426, butane is a liquefied petroleum gas and, therefore, an "alternative fuel" for purposes of the alternative fuel mixture credit.  Defendant disagrees with this characterization of butane as an alternative fuel.  As Plaintiff demonstrates in this memorandum, a plain language reading of section 6426 shows that Congress specifically identified liquefied petroleum gas, without any exceptions, as an "alternative fuel."  A staggering number of authorities, including regulations and guidance issued by the U.S. Department of Treasury and the Service, agree that butane is a liquefied petroleum gas.  Butane is therefore a liquefied petroleum gas and, for purposes of section 6426, an alternative fuel.  Defendant's arguments to ignore this plain meaning of the statutory language are without merit.  Plaintiff respectfully requests that the Court grant this motion for partial summary judgment by holding that butane is a liquefied petroleum gas and, as a result, an alternative fuel for purposes of the alternative fuel mixture credit.

## III.    STANDARD OF REVIEW

The Court should grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a).  RCFC 56 expressly permits parties to move for summary judgment "at any time" on a "part of [a] claim or defense."  RCFC 56(a), (b).  Cases such as the one presented here, which involve competing interpretations of a statute, are particularly well-suited for adjudication by summary judgment.

2

*Santa Fe Pac. R.R. Co. v. United States*, 294 F.3d 1336, 1340 (Fed. Cir. 2002) ("Issues of statutory interpretation and other matters of law may be decided on motion for summary judgment."); *Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999) (stating that summary judgment was appropriate in a tax refund suit when issues of law were the only disputed issues).

## IV.    STATEMENT OF FACTS

During the Taxable Quarters at Issue, Plaintiff was headquartered in Philadelphia, Pennsylvania.  *See* Exs. A through P.[2]  Plaintiff's facilities consisted of one refinery complex that included three facilities relevant to gasoline blending: Point Breeze, Girard Point, and Schuylkill River Tank Farm.  Ex. Q at 33:2–4, 34:8–13.[3]  In 2012, Plaintiff obtained a registration as an S and X fueler from the Service.  Ex. S.

Plaintiff produced a gasoline blend that included butane — i.e., the Butane/Gasoline Mixture — during the Taxable Quarters at Issue.  *See, e.g.*, Ex. T at 6; Ex. U at 6; Ex. V; Ex W. A gasoline blend consists of multiple components.  Ex. R at 34:20–35:1; Ex. V.  The exact components that Plaintiff blended into each batch of gasoline varied; there are no regulatory requirements that specify that certain blend components must be in a particular batch of gasoline. *See* Ex. R at 35:10–13 ("So not every batch of gasoline has butane in it, nor is it required to have butane in it, to meet the regulatory specifications."), 37:1–6.  Butane is *one* component that *may*

---

[2]    Exhibits are provided in the appendix accompanying this memorandum.

[3]    Stephanie Eggert was deposed in her individual capacity (September 23, 2020) and as a representative of Plaintiff in a deposition under RCFC 30(b)(6) (September 25, 2020). *See* Exs. Q and R.  At the time of her depositions, Ms. Eggert was the Vice President of Business Planning for the PES Liquidating Trust.  She has worked in various roles for Plaintiff since 2013 and had also worked for the refinery complex owner prior to PESRM.  Ex. Q at 6:18–19, 8:4–7, 15:19–18:5.

be blended into gasoline.  Ex. Q at 50:4–5; *see also* Ex. R at 37:6–22 (stating that the only component that Plaintiff regularly blended into gasoline is catalytic gasoline).

To prepare for gasoline blending, Plaintiff purchased crude oil that it distilled into many different components, including butane.  Ex. T at 28; Ex. Q at 27:1–28:4.  Crude was purchased through Plaintiff's intermediation partner.  From September 2012 through September 2014, this partner was J.P. Morgan Ventures Energy Corporation ("JPMVEC").  Exs. X through DD; Ex. R at 22:23–23:1.  From October 2014 through 2017, this partner was Merrill Lynch Commodities, Inc. ("MLC").  Ex. EE; Ex. R at 23:2–5.  (Hereinafter, JPMVEC and MLC are collectively referred to as the "Intermediation Partners.")

In addition to producing butane from crude, Plaintiff purchased butane for blending into gasoline.  Ex. T at 29; Ex. Q at 50:8–12.  Butane was purchased from a number of vendors.  Ex. T at 29 (table showing vendors and amounts purchased).  The purchase of butane was documented with invoices and bills of lading, which characterize the purchased butane as "liquefied petroleum gas."  *See, e.g.*, Exs. FF through MM.

Before turning to the process used by Plaintiff to produce butane from crude, it is helpful to review some information about butane.  The scientific formula for butane is $C_4H_{10}$, and it is sometimes called "C4."  Encyclopedia Britannica, https://www.britannica.com/science/butane (last visited Nov. 11, 2020); PubChem, https://pubchem.ncbi.nlm.nih.gov/compound/Butane (last visited Nov. 11, 2020); Ex. Q at 48:16–18.  Plaintiff used both "normal butane" and "mixed butane" in its production of gasoline.  "Normal butane" is a high-purity product with "a high percentage of normal butane, greater than 90 percent by volume."  Ex. R. at 40:2–13.  "Mixed butane" is generally a mix of butane (C4) and pentane (C5) and includes a lower percentage of C4 than normal butane.  *Id.*; Ex. Q at 97:1–8.  Plaintiff produced both types of butane during the

4

Taxable Quarters at Issue: approximately 20 percent was normal butane and approximately 80 percent was mixed butane.  Ex. R at 43:8–20; Ex. T at 28–29.  Of the butane purchased during the Taxable Quarters at Issue, "the large majority . . . was a normal butane stream" because "[t]hat's what was commercially available."  Ex. R at 42:4–8, 49:1–3.  Isobutane and a mix of butane and butylene ("BB") are two other types of butane produced by Plaintiff, however these types were not used by Plaintiff to produce gasoline.  *See* Ex. T at 28.  (Hereinafter, references to "butane" mean, collectively, both normal and mixed butane.)

Plaintiff followed a multi-step process for distilling crude into butane and other components that could be used for gasoline production.  Specifically, the refinery's Point Breeze and Girard Point facilities each produced three streams of butane through various processing units.  Ex. Q at 32:6–9, 33:2–5.  First, butane was produced from crude at the Crude Unit and further refined in the Light-Ends Unit.  At the Crude Unit, crude was processed through a distillation column.  Due to the pressure and heat applied in the distillation column, "fractions" with lower boiling points, which included butane and propane, rose to the top of the distillation column as gas.  This fraction, or "light cut," was then sent to the Light-Ends Unit where it was processed through additional distillation columns to refine the butane stream.  *Id.* at 27:2–28:18, 29:5–11, 29:25–30:1, 30:23–24, 31:17–21, 33:4–10.  Second, butane was recovered from the Reformer Unit.  Naphtha, a product distilled from crude, was sent through the Reformer Unit to change the chemical structure of the naphtha.  A by-product of this process was butane.  *Id.* at 30:3–10, 33:2–22.  Third, butane was recovered from the Fluid Catalytic Cracking ("FCC") Unit.  A heavy fraction from the Crude Unit was subjected to high temperatures in the FCC Unit.  As part of this process, BB (a mix of butane and butylene) was released.  This BB was then sent through the Alkylation Unit, which separated the butane and butylene.  The resulting butane was

captured by the refinery.  *Id.* at 37:9–38:12.  Butane produced by each of these processes was stored in spheres with any purchased butane for use in gasoline blending.  *Id.* at 32:17–19.

Though Plaintiff primarily used butane as a component of gasoline, Plaintiff on some occasions sold butane.  There was "always a choice" about how to use butane; the refinery "did the economic analysis to determine the utilization for the butane."  Ex. R at 199:2–4.  The amounts sold were "relatively small" compared to the amounts consumed by the refinery.  *Id.* at 200:1–2.

Blending butane and other components into gasoline was a complex process.  Plaintiff's Optimization Team determined which components would be blended into a batch of gasoline and in what quantities.  The Optimization Team considered a number of factors when developing this daily recipe, such as historical data of the refinery's operations, costs of purchasing gasoline components, storage costs, and the sales prices of finished fuels.  Ex. T at 6.  The Optimization Team also acted as "a liaison" between the Commercial Team, which provided input about the price of products in the market, and the Refinery Team, which provided input about the capabilities of the refinery.  The Optimization Team would "interface with the Commercial Team to guide their sales and purchases, and interface with the Refinery Team to guide their execution for production."  Ex. Q at 21:23–22:10.

One factor that the Optimization Team considered was maximizing the profit of each barrel of gasoline, which was accomplished in part by minimizing the cost of the components used to blend each barrel of gasoline.  Ex. T at 6.  Butane was the cheapest component of a gasoline blend.  *Id.*; Ex. R at 155:21–156:1, 35:14–18 ("Butane is a very inexpensive component and, therefore, from a profitability perspective, there is some incentive to blending butane, again, within the constraints of the regulatory specifications for the finished gasoline barrel.").

6

Therefore, using butane as a component in blending a barrel of gasoline would lower the cost of that barrel of gasoline and Plaintiff's profit margin would be higher than on other barrels that contained less or no butane.  The Optimization Team considered this cost difference and formulated the daily recipe to maximize the amount of butane that could be blended into gasoline.  Ex. T at  6.

The amount of butane that could be blended into gasoline was limited, however, by volatility requirements.  *Id.* at 7–8. Volatility requirements are set by the U.S. Environmental Protection Agency ("EPA") and vary for each type of finished fuel.  *Id.* at 7.  The volatility requirements cap certain fuel specifications, such as Reid vapor pressure ("RVP"), distillation, and gravity, among others, such that the specifications of any gasoline blend cannot exceed the volatility requirements for that type of fuel.  *Id.*; Ex. R at 38:1–8; Ex. NN at 2.  The different components that may be blended into finished gasoline have their own specifications that may be higher or lower than the volatility requirements for an intended batch of gasoline.  Ex. T at 7.  Therefore, gasoline components, including butane, may be blended in different percentages to produce a batch of gasoline, so long as the specifications of the resulting gasoline do not exceed the relevant volatility requirements.  *Id.* at 7–8.

The volatility requirements change seasonally.  For example, the RVP required for winter-blend gasoline is higher than the RVP required for summer-blend gasoline.  A high RVP ensures that the gasoline evaporates more easily in low temperatures, which is necessary for engines to operate properly during cold winter months.  Conversely, the volatility requirements for summer-blend gasoline do not allow for such a high RVP, which prevents excessive evaporation when temperatures are high.  Ex. T at 8; Ex. Q at 59:16–22.  Per the volatility specifications, summer blend gasoline was available from May 1 through September 15 of each

year.  Ex. Q at 60:9–10; Ex. MM at PESRM-0070092–93; *see also* 40 C.F.R. § 80.82(e)(2)

(prohibiting butane from being blended with reformulated gasoline, or RBOBs, between April 1

and September 30).  Plaintiff added different amounts of butane into gasoline depending on these

seasonal changes to the volatility requirements.  Ex. T at 8; Ex. Q at 60:19–61:6.

The Optimization Team worked daily to balance the desire to maximize profits against

the relevant volatility specifications:

> The specifications are varied, so there are a variety of specs on each
> different grade of gasoline that you're required to meet.  What we do on a
> regular basis is we try to meet those specifications for the least amount of
> raw material cost.  And that's how you maximize your profit margin.  You
> decrease your raw material cost.

Ex. R at 35:2–13.

A number of other factors played a role in the Optimization Team's determination of the

daily recipe.  The Optimization Team considered the availability of components and the costs

associated with purchasing and storing components.  The refinery's production and consumption

of butane changed with the seasons.  In the summer, butane production was high and the

consumption was low.  *Id.* at 150:16–20.  Conversely, consumption was higher in the winter and

outpaced production, such that Plaintiff had to purchase additional butane.  *Id.* at 151:2–6 ("In

the wintertime, the RVP is considerably higher from a specification perspective.  So you

consume the butane that you built in the summer as well as purchase additional butane."); *id.* at

154:19–23 ("Winter gasoline volume as a whole increases because you're able to put more

butane in the blend due to the specification change.  So the percentage of butane in the gasoline

increases as well as the total volume of gasoline.").  The Optimization Team also considered the

impact of costs associated with purchasing and storing butane, which shifted with the seasonal

demands for blending butane into gasoline.  Ex. T at 7.

Once the daily recipe was set by the Optimization Team, gasoline blending could begin. The blend components, including butane, were pumped from their respective tanks or spheres to feed in-line blenders in the amounts set by the daily recipe.  Ex. V at 2, 4; Ex. Q at 101:17–18. As the components were blended, other additives were incorporated for regulatory purposes (e.g., a corrosion/rust inhibitor and a silver strip additive).  Ex. W at 3, 5; Ex. U at 8; Ex. Q at 57:12–15.  During blending, octane, RVP, and distillation were continuously monitored.  The blending system used these values and other component data to calculate the predicted final blend values for the various volatility specifications.  The blending system adjusted the component flows, as necessary, to achieve recipe targets while maximizing profit.  Ex. V at 2, 4; Ex. Q at 77:13–78:1.

Plaintiff produced multiple types of gasoline that included butane during the Taxable Quarters at Issue:  83CBOB, 87RBOB, 91CBOB, and 93RBOB.  The number designates the octane of the gasoline blend.  CBOB stands for conventional gasoline blend stock for oxygenate blending.  RBOB stands for reformulated gasoline blend stock for oxygenate blending.  Ex. U at 7.  The difference between the two blends is the geographic location where each blend is sold and consumed; "[t]he regulated grades are mainly in and around cities and conventional [grades] are outside of densely-populated areas."  Ex. Q at 44:22–25.

Plaintiff made gasoline for the purpose of creating a fuel for the gasoline market. Plaintiff's gasoline could be used as fuel in a number of engines, including but not limited to engines in cars; sport utility vehicles; light trucks; motorcycles; recreational vehicles and boats; small aircraft; equipment and tools used in construction, farming, forestry and landscaping; and electricity generators for portable and emergency power supply.  Ex. U at 7.  Ultimately, "the

9

gasoline met all the regulatory requirements to be used in any gasoline market or any gasoline consumption source." Ex. R at 52:8–11.

Plaintiff sold all gasoline to its Intermediation Partners, which were unrelated parties. *See, e.g.*, Ex. X; Ex. EE; Ex. R at 26:20–27:9 (stating that, while Plaintiff's trading organization found customers to purchase the gasoline, title for gasoline first passed from Plaintiff to JPMVEC before it was then sold to the customer, such that JPMVEC was the seller of record); *id.* at 31:16–32:5 (stating that the sale of gasoline with MLC was similarly structured). Gasoline that was transported out of the refinery by pipeline or marine vessel was then sold by the Intermediation Partners to customers. Ex. Q at 56:1–3; Ex. R at 26:20–27:9, 31:16–32:5; Ex. V at 2, 4. A portion of the gasoline was purchased from the Intermediation Partner by Plaintiff, who sold the gasoline to customers at terminals and used it to fuel vehicles at the refinery. Ex. Q at 55:14–16; Ex. R at 57:19–58:6; Ex. V at 2; Ex. U at 7.

Plaintiff timely filed quarterly excise tax returns on Form 720 for each of the Taxable Quarters at Issue. Exs. A through P. Plaintiff subsequently filed its administrative claims for refund with the Service on Forms 720X. The administrative claims sought refunds for the alternative fuel mixture credit pursuant to section 6426(e) based on a mixture of "liquefied petroleum gas," an alternative fuel, with a taxable fuel during the Taxable Quarters at Issue. Exs. A through N; Ex. OO. Forms 720X for the Taxable Quarters ending in 2014 through 2016 were timely filed on or before July 28, 2017. Exs. A through N. These claims were supplemented by a letter to the Service dated January 30, 2018.[4] Ex. OO. Form 720X for the Taxable Quarters ending in 2017 was timely filed on October 16, 2018. Ex. PP.

---

[4]    On January 8, 2018, the Service issued Revenue Ruling 2018-2, 2018-2 I.R.B. 277, in which it announced the novel legal interpretation that butane constituted a taxable fuel for purposes of the alternative fuel mixture credit. Plaintiff subsequently articulated in a

After more than six months had passed since the administrative claims for refund were filed, without response from the Service, Plaintiff filed its complaint in this case on April 8, 2019, alleging claims for the Taxable Quarters ending in 2014 through 2016.[5]  An amended complaint was filed on August 27, 2019, adding allegations for the Taxable Quarters ending in 2017.  *See* Compl. ¶¶ 9, 10; Amend. Compl. 1 n.1, ¶¶ 9, 10.

## V.    ARGUMENT

Courts "give effect to the law Congress enacted."  *Lewis v. City of Chi., Ill.*, 560 U.S. 205, 217 (2010).  In doing so, courts "must presume" that Congress "says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).  When the "statute's language is plain, the sole function of the courts is to enforce it according to its terms."  *Johnson v. United States*, 529 U.S. 694, 723 (2000) (citation omitted).

The language of section 6426 is plain: all liquefied petroleum gases constitute "alternative fuel[s]."  The standard definition of liquefied petroleum gas includes butane. Therefore, butane is an "alternative fuel" for purposes of the alternative fuel mixture credit. When the meaning of a statute is plain, as it is here, the task of statutory interpretation has reached its end.

---

letter to the Service dated January 30, 2018, its alternative claims for a mixture of propane, a type of liquefied petroleum gas and an alternative fuel, and butane, a taxable fuel according to the Revenue Ruling (the "Propane/Butane Mixture").  Plaintiff discussed at length the circumstances that led to the statement of the alternative claims and why they should be considered timely filed in its response to Defendant's motion to dismiss.

[5]     The Service issued a proposed notice of disallowance dated March 15, 2019, regarding the administrative claims for refund based on the Propane/Butane Mixture for the Taxable Quarters ending in 2014 through 2016.  Pl.'s Resp. Mot. Dismiss, Ex. A (Notice of Proposed Disallowance), ECF No. 23-2.

**A.      The plain language of section 6426 confirms that butane is an "alternative fuel" for purposes of the alternative fuel mixture credit**

**1.      Statutory framework**

Section 6426(e) allows a tax credit for an alternative fuel mixture based on the number of gallons of "alternative fuel" used by the taxpayer to prepare an alternative fuel mixture. Subsection (e) defines the term "alternative fuel" as fuel "other than a fuel described in subparagraph (A), (C), or (F) of subsection (d)(2)."  § 6426(e)(2).  Subsection (d)(2) defines "alternative fuel" as follows:

> ALTERNATIVE FUEL   For purposes of this section, the term "alternative fuel" means—
>
> (A)      liquefied petroleum gas,
> (B)      P Series Fuels (as defined by the Secretary of Energy under section 13211(2) of title 42, United States Code),
> (C)      compressed or liquefied natural gas,
> (D)      liquefied hydrogen,
> (E)      any liquid fuel which meets the requirements of paragraph (4) and which is derived from coal (including peat) through the Fischer-Tropsch process,
> (F)      compressed or liquefied gas derived from biomass (as defined in section 45K(c)(3)), and
> (G)      liquid fuel derived from biomass (as defined in section 45K(c)(3)).
>
> Such term does not include ethanol, methanol, biodiesel, or any fuel (including lignin, wood residues, or spent pulping liquors) derived from the production of paper or pulp.

Section 6426(d)(2)(A) identifies "liquefied petroleum gas" as a type of alternative fuel "[*f*]*or purposes of this section*," including for the alternative fuel mixture credit in subsection (e). (Emphasis added.)  "Liquified petroleum gas" is not defined in section 6426.

**2.      Statutory construction begins with a consideration of the plain language of the statute**

In construing a statute, this Court begins by analyzing the plain language of the statute itself.  *Williams v. Taylor*, 529 U.S. 420, 431 (2000) ("We start, as always, with the language of

the statute."); *Xerox Corp. v. United States*, 41 F.3d 647, 658 (Fed. Cir. 1994) ("In construing the tax law, as for any statute, the starting point is the words of the statute." (citing *Bread Pol. Action Comm. v. Fed. Election Comm'n*, 455 U.S. 577, 580 (1982))).  "If the statute is clear and unambiguous, then the plain meaning of the statute is conclusive," and the Court must "give effect to the unambiguously expressed intent of Congress."  *Xianli Zhang v. United States*, 640 F.3d 1358, 1364 (Fed. Cir. 2011).  "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).  Analyzing the text of the statute is the *first* step in the process of statutory construction.  *Moskal v. United States*, 498 U.S. 103, 108 (1990) ("In determining the scope of a statute, we look *first* to its language, giving the words used their ordinary meaning." (emphasis added (citations omitted))).  As has been recognized by this Court, "the plain text of the statute is of paramount importance."  *Eaglehawk Carbon, Inc. v. United States*, 122 Fed. Cl. 209, 211–12 (2015) ("Because a statute's text is Congress's final expression of its intent, if the text answers the question, that is the end of the matter." (citing *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998))).

### 3.    Section 6426 is clear and unambiguous:  butane is a liquefied petroleum gas, and therefore butane is an alternative fuel for purposes of the alternative fuel mixture credit

In assessing whether the language of a statute is clear and unambiguous, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."  *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (citation omitted).  "Dictionary definitions can elucidate the ordinary meaning of statutory terms."  *Xianli Zhang*, 640 F.3d at 1364 (citing *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277 (2011)).  Where Congress has used technical words or terms of art, it is proper to explain them by

13

reference to the relevant industry in which they are used.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 201 (1974); *Xerox Corporation*, 41 F.3d at 658 (recognizing the Court must "tak[e] the words in their ordinary meaning in the field of interest" (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979))).

Section 6426 does not define the term liquefied petroleum gas.  A review of dictionary and technical definitions from the relevant field — here, the fuel industry — reveals a broad consensus that butane is a type of liquefied petroleum gas.

Both standard and technical dictionaries recognize that butane is a type of liquefied petroleum gas.  The Merriam-Webster dictionary, for example, defines "liquefied petroleum gas" as "a compressed gas that consists of flammable hydrocarbons (such as propane and butane) and is used especially as fuel or as raw material for chemical synthesis."  Merriam-Webster.com, https://www.merriam-webster.com/dictionary/liquefied%20petroleum%20gas.  The McGraw-Hill Dictionary of Scientific and Technical Terms defines "liquefied petroleum gas" as a "product of petroleum gasses; principally propane and butane."  McGraw-Hill Dictionary of Scientific and Technical Terms 1217 (6th ed. 2003).

Standard chemistry textbooks also recognize that butane is a type of liquefied petroleum gas.  Principles of Environmental Chemistry states that the chemical compounds "C3H8 and butane (C4H10) are useful by-products of the natural gas refining process.  After they have been removed from crude natural gas, these by-products are converted to a liquid known as liquefied petroleum gas."  James E. Girard, *Principles of Environmental Chemistry* 303 (3d ed. 2013).  Environmental Science recognizes that, "[w]hen a natural gas field is tapped, propane and butane are liquefied and removed as liquefied petroleum gas (LPG)."  G. Tyler Miller, *Environmental*

14

*Science* 417 (4th ed. 1993); *see also* G. Tyler Miller, *Living in the Environment* 380 (6th ed. 1990) (providing same description of gases that are liquefied petroleum gases).

Different actors in the fuel industry also identify butane as a type of liquefied petroleum gas. The American Society for Testing and Materials ("ASTM")'s specification D1835 for Liquefied Petroleum (LP) Gases covers "products commonly referred to as liquefied petroleum gases, consisting of propane, propene (propylene), butane, and mixtures of these materials." ASTM International, D1835-20, *Standard Specification for Liquefied Petroleum (LP) Gases*, § 1.1, https://www.astm.org/Standards/D1835.htm (last visited Nov. 12, 2020). The ASTM is an industry standard that the Service uses to define terms for fuel excise taxes. *See, e.g.*, Treas. Reg. § 48.4081-1(d). Similarly, the U.S. Energy Information Administration ("EIA") describes liquefied petroleum gases as "[a] group of hydrocarbon gases, primarily propane, normal butane, and isobutane, derived from crude oil refining or natural gas processing. These gases may be marketed individually or mixed." EIA, https://www.eia.gov/tools/glossary/index.php?id=L (last visited Nov. 11, 2020). Defendant also recognizes the EIA as an authority, as shown by its references to the EIA in other law suits concerning the alternative fuel mixture credit[6] and the

---

[6]   *See, e.g.*, Brief for the Appellee at 7, *U.S. Venture, Inc. v. United States*, No. 20-1861 (7th Cir. Oct. 2, 2020), ECF No. 23; *id.* at 51.

*Vitol, Inc. v. United States* is docketed in the Southern District of Texas, Case No. 4:18-cv-02275. Vitol sought interlocutory appellate review of a memorandum and recommendation denying its motion for partial summary judgment on the characterization of butane for purposes of section 6426. Mem. & Recomm. (ECF No. 73), adopted in full, Order (ECF No. 75) (March 24, 2020). The interlocutory appeal, Case No. 20-20237, is pending with the Fifth Circuit.

*U.S. Venture, Inc. v. United States* is docketed in the Eastern District of Wisconsin, Case No. 1:18-cv-01757 and Case No. 1:19-cv-00595. U.S. Venture sought appellate review of the district court decision granting summary judgment in favor of Defendant on U.S. Venture's claims for the alternative fuel mixture credit for a mixture of butane and gasoline. (ECF No. 80). The appeal, Case No. 20-1861, is pending with the Seventh Circuit.

15

Service's citations of the EIA in its own guidance.[7]  There are numerous other organizations in the fuel industry that recognize that butane is a type of liquefied petroleum gas.[8]

Experts on the fuel industry have reiterated that butane is a type of liquefied petroleum gas.  In *Vitol Inc. v. United States* in the District Court for the Southern District of Texas, another alternative fuel mixture credit case, Kenneth M. Stern reached the opinion on behalf of Vitol that "[b]utane is a liquefied petroleum gas ('LPG')" and that "[t]he term 'liquefied petroleum gas' is commonly understood to include butane."  Expert Report of Kenneth M. Stern (Sept. 19, 2019) at 4, *Vitol, Inc. v. United States*, No. 4:18-cv-02275 (S.D. Tex. Jan. 8, 2020), ECF No. 58-1, Appendix A.  Defendant's own expert in that case, Karl W. Gardner, admitted in his deposition testimony that "butane is always an LPG."  Transcript of Expert Deposition of Karl W. Gardner at 49:2–4 (Dec. 4, 2019), *Vitol, Inc. v. United States*, 4:18-cv-02275 (S.D. Tex. Jan. 8, 2020), ECF No. 58-1, Appendix B.

In addition, courts have regularly recognized that butane is a type of liquefied petroleum gas.  The predecessor to this Court, the Court of Claims, recognized in 1941 that butane is a liquefied petroleum gas.  *Phillips Pipe Line Co. v. United States*, 40 F. Supp. 981, 986 (Ct. Cl. 1941) ("Butane is a gas at temperatures above 30° F., unless kept under pressure.  To retain it as a liquid, therefore, butane is kept at a temperature below 30° F., or subject to pressure.  It is

---

[7]     *See* I.R.S. L.A.F.A. 20151001F (Dec. 10, 2014) (citing the EIA definition of compressed natural gas for purposes of section 6426(d)(2)(C) in a non-docketed service advice review dated December 10, 2014).  Under section 6110(k)(3), "[u]nless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent."  Though L.A.F.A.s are not precedential under section 6110(k)(3), they nonetheless provide insight about the Service's views on issues.  For example, the District Court for the District of New Jersey relied on a L.A.F.A. as evidence of the Service's position on the tax treatment of certain settlement payments when the LAFA was consistent with the applicable law.  *Natale v. E. Coast Salon Servs., Inc.*, No. 13-1254, 2016 WL 659722 (D.N.J. Feb. 18, 2016).

[8]     See a list of statements from fuel industry organizations in Exhibit U, pages 14–16.

16

classified as a 'liquified petroleum gas.'").  The district court in *Vitol* recently found that "the common meaning of LPG includes butane."  Mem. and Recomm. at 6, *Vitol, Inc. v. United States*, No. 4:18-cv-02275 (S.D. Tex. Feb. 25, 2020), ECF No. 73 (opinion adopted by district court (ECF No. 75), Mar. 24, 2020).  Other courts have recognized the same.  *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. ExxonMobil Gas & Power Mktg. Co.*, 691 F. App'x 195, 195 (5th Cir. 2017) (per curiam) (mem.) ("[L]iquefied petroleum gas [is] also known as propane or butane."); *Shamrock Oil & Gas Corp. v. Commissioner*, 35 T.C. 979, 988 (1961) ("'LPG,' or liquefied petroleum gas, consists usually of a mixture of propane and butane."), *aff'd*, 346 F.2d 377 (5th Cir. 1965), *acq.* 1966-2 C.B. 7.

    The Department of Treasury and the Service have themselves explicitly defined liquefied petroleum gas to include butane as well as other fuels.  Most relevant to this case, the Department of Treasury and the Service interpreted liquefied petroleum gas to include "propane, butane, pentane, or mixtures of the same" in regulations issued under section 4041.  Treas. Reg. § 48.4041-8(f)(1)(i).  Other tax regulations and guidance have defined butane as a type of liquefied petroleum gas.  Treas. Reg. § 1.7704-4(c)(5)(i)(B) (describing the constituents of natural gas to include "those which are normally recovered in a liquid phase (propane, butane, pentane, and heavier streams)"); Treas. Reg. § 1.907(c)-1(d)(6) (defining a "primary product" from certain gas to include "liquefiable petroleum gases (such as ethane, propane, and butane), and liquid products (such as natural gasoline)"); Temp. Treas. Reg. § 1.927(a)-1T(g)(2)(ii)(C) (similar); Treas. Reg. § 1.993-3(g)(3)(ii)(c) (defining a "primary product from gas" to include "[l]iquified petroleum gases such as ethane, propane, and butane"); I.R.M. 21.7.8.4.1.4.4.10 (2009) (stating that "LPG includes propane, butane, pentane, or mixtures of those gases"); I.R.S. P.L.R. 6007053230A (July 5, 1960) (recognizing "liquefied petroleum gas" to include "propane,

17

butane, or pentane"); I.R.S. T.A.M. 6007058570A (July 5, 1960) (recognizing "liquefied

petroleum gas" to include "propane, butane, or pentane").[9]

Other federal agencies agree that butane is a type of liquefied petroleum gas and have

issued regulations including that definition.[10]  At least forty-two state statute definitions also

recognize that butane is a type of liquefied petroleum gas.[11]

As demonstrated by this wealth of authorities, the well-established definition of liquefied

petroleum gas includes butane.  Butane, therefore, is an alternative fuel for purposes of section

6426.

    **B.**    **Though the scheme in which a statute appears may provide insight for interpreting the statute, the statutory context outside of section 6426 does not dislodge the plain language of section 6426 that butane is a liquefied petroleum gas and, therefore, an alternative fuel**

In some circumstances, the plain language of a statute may be augmented by "the specific

context in which that language is used, and the broader context of the statute as a whole."

*Robinson*, 519 U.S. at 341.  This may include an "explor[ation of] the statutory context of an

enactment and its amendments over time, as well as other contemporary statutory provisions that

---

[9]    Like L.A.F.A.s, *infra* note 7, private letter rulings and technical advice memoranda are not precedential under section 6110(k)(3), but they nonetheless provide an indication of the views of the Service.  Regarding private letter rulings, the U.S. Supreme Court acknowledged in *Hanover Bank v. Commissioner*, 369 U.S. 672 (1962), that private letter rulings are useful in revealing the interpretation put upon a statute by the agency charged with the responsibility of administering the revenue laws.  Further, the Internal Revenue Manual provides that "[e]xisting private letter rulings and memorandums . . . may be used as a guide with other research material in formulating an area office position on an issue."  I.R.M. 4.10.7.2.10(4) (2006); *see also Rowan Cos. v. United States*, 452 U.S. 247, 261 n.17 (1981).  Similarly, this Court has found a technical advice memorandum helpful in reinforcing a taxpayer's position and revealing the Service's interpretation of the law.  *Buckeye Power Inc. v. United States*, 38 Fed. Cl. 154, 161 (1997).

[10]    See a list of federal agency regulations in Exhibit U, pages 19–20.

[11]    See a list of state statutes in Exhibit U, pages 20–27.

are relevant to the context of the provision under review." *In re City of Houston*, 731 F.3d 1326, 1332 (Fed. Cir. 2013).

Section 6426 is part of a statutory scheme that Congress has incrementally created over the past half-century to encourage the production and use of fuels that reduce pollution and reduce the United States' reliance on foreign oil.[12]  In addition to the tax credits of section 6426, Congress has imposed excise taxes on certain "alternative fuels" and "taxable fuels."  In this excise tax scheme, butane may be subject to excise taxes as either an alternative fuel or a taxable fuel depending on the circumstances.  Because the excise tax and tax credit statutes serve different purposes, and Congress provided specific definitions of alternative fuel for each, the excise tax scheme does not provide any insight on how to interpret section 6426's definition of alternative fuel.

Two statutes, sections 4041 and 4081, impose excise taxes on liquefied petroleum gas in the form of butane.  Section 4081 imposes tax on certain "taxable fuel[s]," including gasoline, kerosene, and diesel, that are removed from a refinery or terminal, entered into the United States, or sold to certain persons not registered with the Service.  §§ 4081(a)(1)(A), 4083(a)(1). Gasoline is defined to include "any gasoline blend stock," to the extent prescribed in regulations. § 4083(a)(2)(B)(i).  To qualify as a "gasoline blend stock," the fuel must be a "petroleum product component of gasoline."  § 4083(a) (flush language).[13]  Regulations further define "gasoline blendstocks" to include "[b]utane."  Treas. Reg. § 48.4081-1(c)(3)(i)(B).

---

[12]     *See, e.g.*, Pub. L. No. 95-617, 92 Stat. 3117 (1978); the American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 ("AJCA") (creating section 6426 and the alcohol fuel mixture credit under section 6426(b) and the biodiesel mixture credit under section 6426(c)).

[13]     *See Eaglehawk Carbon, Inc. v. United States*, 122 Fed. Cl. 209, 212 n.1 (2015) (noting that the phrase "flush language" refers to the language that is "published flush with a left margin and is not indented").

Section 4041 imposes tax on certain "alternative fuels," previously known as "special motor fuels." § 4041. Subsection (a)(1) imposes an excise tax on "any liquid" other than gasoline sold for or used in a diesel-powered highway vehicle or train unless "tax was imposed on such liquid under section 4081." § 4041(a)(1)(A), (a)(1)(B). Subsection (a)(2) imposes an excise tax on "any liquid" sold for or used in a motor vehicle or motorboat, "other than . . . any product taxable under section 4081." § 4041(a)(2)(A); Treas. Reg. § 48.4041-8(f)(2) (excepting from tax under section 40401 fuels that are "taxable under the provisions of section 4081"). Regulations define "special motor fuel" to include "[a]ny liquefied petroleum gas (such as propane, butane, pentane, or mixtures of the same)." Treas. Reg. § 48.4041-8(f)(1)(i).

Sections 4041 and 4081 serve the same purpose: to fund the Highway Trust Fund, which helps pay for the interstate highways, among other things. § 9503(b). The mutually exclusive structure of the excise taxes – a given gallon of fuel can only be an alternative fuel *or* a taxable fuel – avoids double taxation while ensuring that excise tax is collected for the Highway Trust Fund on fuel that may be used on the interstate highways.

This excise tax scheme creates a dual definition of butane as either an alternative fuel or a taxable fuel, based on its source. Under section 4081, butane is only a taxable fuel when it is a "petroleum component product of gasoline," meaning it is derived from crude oil. § 4083(a) (flush language).[14] Butane is not only derived from petroleum, however; it is also derived from natural gas wells. *See, e.g.*, EIA, Petroleum and Other Liquids, *Supply and Disposition of Crude Oil and Petroleum Products*, https://www.eia.gov/dnav/pet/pet_sum_snd_d_nus_mbblpd_a_cur-

---

[14]   Defendant has conceded in two other alternative fuel mixture cases that only petroleum-derived butane is a "taxable fuel" that is subject to tax under section 4081. Brief for the Appellee at 8 n.2, *Vitol, Inc. v. United States*, No. 20-20237 (5th Cir. Sept. 10, 2020), ECF No. 19; Brief for the Appellee at 8 n.2, *U.S. Venture, Inc. v. United States*, No. 20-1861 (7th Cir. Oct. 2, 2020), ECF No. 23.

5.htm (release date Oct. 30, 2020) (reporting that, from 2013 to 2019, the percentage of petroleum-derived butane produced in the United States ranged from approximately 4% to 11%). Natural gas-derived butane cannot be considered a "taxable fuel" because it is not a "petroleum product component." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (holding that "[i]t is our duty to give effect, if possible, to every clause and word" so as to avoid rendering any part of the statute meaningless surplusage (citation omitted)). Instead, natural gas-derived butane is an "alternative fuel" taxable under section 4041, because it is a liquefied petroleum gas and *not* taxable under section 4081.

This dual definition of butane makes sense in the context of the excise tax scheme; it ensures that butane that may be used to fuel motor vehicles on the interstate highways is subject to excise tax. There is no reason to import this dual definition of butane from the excise tax scheme into the tax credit provided by section 6426, however. Congress did not identify two categories of butane for purposes of the alternative fuel mixture credit; one category (petroleum-derived butane) that may be excluded from the definition of alternative fuel, and another category (natural gas-derived butane) that is included. Nor did Congress define the term liquefied petroleum gas in section 6426(d)(2) to include some types of butane and exclude others. It is illogical to redefine the term liquefied petroleum gas to include natural gas-derived butane, but not petroleum-derived butane, because butane molecules are the same whether derived from petroleum or from natural gas.

Section 6426(d)(2) states, clearly and unambiguously, that liquefied petroleum gas constitutes an alternative fuel. Since the enactment of section 6426 in 2005 as part of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Pub. L. No. 109-59, 119 Stat. 1144 (2005) ("SAFETEA"), the statute has consistently defined liquefied

21

petroleum gas as a type of alternative fuel, without any exceptions or limitations.[15]  Butane has never been excluded from the definition of liquefied petroleum gas or alternative fuel.  Nor has the definition of alternative fuel in section 6426(d)(2) ever excluded fuels that can be characterized as taxable fuels.  This clear direction from Congress should not be undermined by importing a separate set of definitions of alternative fuel from the excise tax scheme.

Importing the dual definition of butane into section 6426(d)(2) would have impacts beyond the alternative fuel mixture credit.  Section 6426(d) provides a "neat" alternative fuel credit for alternative fuels not blended with a taxable fuel.  Because section 6426 provides a singular definition of alternative fuel for both the neat alternative fuel credit and the alternative fuel mixture credit, a judicial decision to exclude butane from section 6426(d)(2)'s definition of alternative fuel would remove butane from qualifying for either tax credit.  The neat alternative fuel credit has no relationship with taxable fuels.  There is no reason for the Court to limit the

---

[15]    *See* Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, §204(a), 122 Stat. 3765, 3834 (extending credits through 2009); Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, §704, 124 Stat. 3296, 3311 (same, through 2011); American Taxpayer Relief Act of 2012, Pub. L. No. 112-240, §412, 126 Stat. 2313, 2343 (2013) (same, through 2013); Tax Increase Prevention Act of 2014, Pub. L. No. 113-295, §160, 128 Stat. 4010, 4022 (same, through 2014); Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, §192(a)(1), 129 Stat. 2242, 3075 (2015) (same, through 2016); Bipartisan Budget Act of 2018, Pub. L. No. 115-123, §40415(a)(1), 132 Stat. 64, 152 (same, through 2017).

Plaintiff recognizes that section 6426(e) was also amended in December 2019 by the Consolidated Appropriations Act, 2020, Pub. L. No. 116-94, §133, 133 Stat. 2534, 3233 (2019), which extended the alternative fuel mixture credit through 2020 and limited the types of fuels that may qualify as alternative fuels.  Plaintiff notes that Congress specifically included a clause in this December 2019 legislation stating that "[n]othing contained in this subsection or the amendments made by this subsection shall be construed to create any inference as to a change in law or guidance in effect prior to enactment of this subsection." §133(b)(3), 133 Stat. at 3234.  Therefore, the December 2019 legislation should have no bearing on this Court's analysis of whether, prior to the legislation, butane constituted an alternative fuel for purposes of the alternative fuel mixture credit.

types of liquefied petroleum gas that qualify for the neat alternative fuel credit.  Section

6426(d)(2) explicitly provides a definition of the term alternative fuel "[f]*or purposes of this*

*section*."  (Emphasis added.)  This singular definition of alternative fuel is to be applied to the

entirety of section 6426, including the alternative fuel mixture credit in section 6426(e).  *See*

*Yarish v. Commissioner*, 139 T.C. 290, 296–97 (2012) (refusing to apply a definition from

section 72 to an issue under section 402 because Congress did not provide instruction for the

former definition to apply for purposes of the Code and because the statutes serve different

purposes).

Congress' intent to *not* exclude butane from these definitions is evidenced by the explicit

exclusion of other fuels from the definition of alternative fuel in the flush language of section

6426(d)(2).  The flush language is the statutory language that states "[s]uch term does not

include ethanol, methanol, biodiesel, or any fuel (including lignin, wood residues, or spent

pulping liquors) derived from the production of paper or pulp."  Butane does not, and has never,

appeared in the flush language.  The last of the excluded fuels – "any fuel (including lignin,

wood residues, or spent pulping liquors) derived from the production of paper or pulp" – is also

known as black liquor.  Black liquor is a "liquid fuel derived from biomass," as described in

section 6426(d)(2)(G).  Black liquor was not initially included in the flush language, and

therefore, was an alternative fuel for purposes of the statute.  *See, e.g.*, I.R.S. C.C.A. 200941011

(June 3, 2009).  However, in 2010, Congress determined that black liquor should no longer be

entitled to the tax credit and excluded it from the definition of alternative fuel by adding it to the

flush language of section 6426(d)(2).  *See* Tax Relief, Unemployment Insurance

Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 701, 124 Stat. 3296,

3310.  As recognized above, butane has never been excluded from the definitions of liquefied

petroleum gas or, more broadly, alternative fuel.  When Congress in a statute "specifies certain exceptions to a general rule, an intention to exclude any further exceptions may be inferred." *Anderson v. Commissioner*, 123 T.C. 219, 242 (2004) ("[I]f a statute specifies certain exceptions to a general rule, an intention to exclude any further exceptions may be inferred."), *aff'd*, 137 F. App'x 373 (1st Cir. 2005).  Had Congress intended to exclude butane or taxable fuels from the definition of alternative fuels, it certainly would have statutorily done so — as it did with ethanol, methanol, biodiesel, and black liquor — in the flush language of section 6426(d)(2).

Alternatively, if Congress intended to limit the definition of alternative fuels in section 6426(d)(2) to specific liquefied petroleum gases (e.g., not including butane), it could have done so by only identifying those liquefied petroleum gases in the statute.  Congress has demonstrated in other statutes that it can, when it chooses, limit a statute's application to only propane.  *See, e.g.*, 15 U.S.C. §§ 6401–6411 (Title 90, Propane Education and Research); § 25C(b)(3) (referencing use of "propane" in home); 42 U.S.C. § 16091(a)(2) (referencing "propane" use in clean school bus program).

Congress created separate definitions of alternative fuel (and therefore liquefied petroleum gas and butane) for the excise tax scheme and for fuel tax credits in section 6426.  The excise tax scheme characterizes butane as an alternative fuel or a taxable fuel based on the source of that butane: butane *may* be a taxable fuel if it is derived from petroleum, but *not* if it is derived from other sources.  In comparison, the plain language of section 6426(d)(2) is refreshingly clear that "alternative fuel" is defined to include liquefied petroleum gas.  Butane is a type of liquefied petroleum gas and, therefore, an alternative fuel for purposes of the alternative fuel mixture credit.  This clear language of section 6426 should not be undermined by the multiple definitions of butane provided by the separate excise tax scheme.  *Xianli Zhang*, 640 F.3d at 1364 ("There is

24

'no errorless test' for identifying unambiguous statutory language, although 'absurd results are to be avoided and internal inconsistencies in the statute must be dealt with.'" (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981))).  Instead, the Court can give meaning to all of the language used by Congress in section 6426 and in the excise tax statutes by recognizing that the two schemes provide separate definitions of alternative fuel for separate purposes.

### C.      The Court's inquiry ends when the language of a statute is clear

Defendant has argued in other alternative fuel mixture cases that the Court should look beyond the statutory language to determine the meaning of "liquefied petroleum gas" and "alternative fuel" for purposes of the alternative fuel mixture credit.  But when the plain language of a statute is clear and unambiguous, as it is here, "the sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *see also Conn. Nat'l Bank*, 503 U.S. at 254 ("When the words of a statute are unambiguous, then, this first canon is also the last.").

In the tax context, the Supreme Court has instructed that courts cannot impose their own understanding of tax policy on statutes that are clear and unambiguous.  In *Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001), for example, the Supreme Court recognized that "[b]ecause the Code's plain text permits the taxpayers here to receive these benefits [at issue], we need not address . . . policy concern[s]."  This policy of judicial restraint is based on a respect for the separation of powers and Congress' unique authority to legislate.  *See, e.g.*, *United States v. Byrum*, 408 U.S. 125, 135 (1972) ("When a principle of taxation requires reexamination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences. When courts readily undertake such tasks, taxpayers may not rely with assurance on what appear to be established rules."); *Griffin v. Oceanic Contractors, Inc.*, 458

U.S. 564, 575 (1982) ("Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. *But in such case the remedy lies with the law making authority, and not with the courts*." (emphasis added (citation omitted))).

This Court has also recognized that tax policy alone is insufficient to trigger an inquiry beyond a statute's plain language. In *Centex Corp. v. United States*, 48 Fed. Cl. 625, 637 (2001), this Court directly rejected the government's argument that a taxpayer received an unintended economic windfall as a result of the plain reading of a tax statute:

> Defendant has argued that a deduction for covered asset losses would violate sound tax policy by conferring a double benefit on plaintiffs. However, because of the unique statutory scheme created by Congress in regard to FSLIC-assisted transactions, this argument fails. As the U.S. Supreme Court recently noted in *Gitlitz v. Commissioner*, 531 U.S. 206, 121 S.Ct. 701, 148 L.Ed.2d 613 (2001), a case concerning a "double windfall" to S corporation shareholders in the context of a discharge of indebtedness, "Because the Code's plain text permits the taxpayers here to receive these benefits, we need not address this policy concern." The same is true here: the Code allowed plaintiffs' FSLIC assistance to be tax-free and also allowed deductions for losses reimbursed with that assistance.

Here, the Court need not look beyond the language of section 6426 because the language is plain; butane is a type of liquefied petroleum gas and, therefore, an alternative fuel.

**D.   The factors that would allow the Court to continue its inquiry beyond the plain meaning of a statute are not present here**

Furthermore, when the plain language of a statute is clear, as it is here, the Court can only look beyond the plain language in specific circumstances: if there is extraordinary evidence of a contrary congressional intent shown by legislative history, or the plain language leads to an absurd result. Neither situation is present in this case.

26

1.    **Legislative history for section 6426 does not reveal extraordinary evidence of a contrary congressional intent to the plain language of the statue and cannot be considered**

This Court may consider the legislative history for a statute when determining the statute's meaning if "the legislative history 'embodies an "*extraordinary showing* of contrary intentions"'." *Sunoco, Inc. v. United States*, 908 F.3d 710, 717 (Fed. Cir. 2018) (quoting *Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009)).  The Federal Circuit has warned about the limited value of legislative history in determining the meaning of a statute and that it should only be used when the language of a statute is ambiguous:

> What is less accepted is what is usually understood as "legislative history," such as the individual statements on the floor of the legislature by key legislators in favor of or opposed to the legislation, or language in committee reports that purports to explain legislative intent.  Many opinions, including those of the Supreme Court, contain statements to the effect that such "legislative history," if it ever is admissible, is only admissible when a statute is deemed "ambiguous"; absent that, the "plain meaning" of a statute may not be varied by these or other nonstatutory factors.  *See Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 395–96, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J., concurring) (stating that "[r]esort to legislative history is only justified where the face of the Act is inescapably ambiguous," and "to select casual statements from floor debates, not always distinguished for candor or accuracy, as a basis for making up our minds what law Congress intended to enact is to substitute ourselves for the Congress in one of its important functions"); *United States v. United Mine Workers of Am.*, 330 U.S. 258, 319, 67 S.Ct. 677, 91 L.Ed. 884 (1947) (Frankfurter, J., concurring) ("It is one thing to draw on all relevant aids for shedding light on the dark places of a statute. To allow inexplicit remarks in the give-and-take of debate to contradict the very terms of legislation and the history behind it is to put out the controlling light on meaning shed by the explicit provisions of an Act in its setting.").

*In re City of Houston*, 731 F.3d at 1333 (alteration in original).

The legislative history for the alternative fuel mixture credit does not provide "extraordinary" evidence that Congress intended to exclude butane from the terms liquefied petroleum gas or alternative fuel.  The Joint Explanatory Statement of the Committee of Congress (the "Joint Statement"), for example, discusses the then-new section 6426 tax credits,

27

including the alternative fuel mixture credit.  H.R. Rep. No. 109-203, at 1121 (2005) (Conf.

Rep.).  The report stated that "the term 'alternative fuel' means liquefied petroleum gas. . . . Such

term does not include ethanol, methanol, or biodiesel."  *Id.*  Congress did not limit the term

liquefied petroleum gas in any way.  Separately, Congress referenced "[l]iquefied petroleum gas

(propane)" in the context of identifying which fuels were then-taxable under section 4041.  *See*

*id.* at 1109, 1119.  Had Congress intended to limit the section 6426 credits to liquefied petroleum

gas in the form of propane, the Joint Statement would have included that same parenthetical in

its discussion of section 6426, and Congress would have used the word "propane" in section

6426(d)(2)(A), as it did elsewhere in the same legislation.

Similarly, reports from the Joint Committee on Taxation do not limit the definition of

alternative fuel in section 6426.  Prior to enactment of the 2005 legislation that created section

6426, the Staff of the Joint Committee on Taxation issued a report titled the Description of the

"Energy Policy Tax Incentives Act of 2005."  In describing the then-"Present Law," the report

recognized that "[l]iquefied petroleum gas (propane)" was subject to the special motor fuel taxes

under section 4041.  JCX-44-05 at 45–46 (Comm. Print June 14, 2005).  The 2005 report did not

discuss or define the terms "alternative fuel" or "liquefied petroleum gas" for purposes of section

6426.  *Id.* at 46.  In 2007, the Staff of the Joint Committee on Taxation issued a report titled the

General Explanation of Tax Legislation Enacted in the 109th Congress that discussed section

6426 as enacted in 2005.  The 2007 report reiterated that the section 4041 tax extended to

"[l]iquefied petroleum gas (propane)."  JCS-1-07 at 91–92 (Comm. Print Jan. 17, 2007).  In

contrast, for purposes of section 6426, the 2007 report defined the term "alternative fuel" to

"mean[] liquefied petroleum gas. . . . Such term does not include ethanol, methanol, or biodiesel." *Id.* at 93.[16]

The congressional reports and the Joint Committee on Taxation's reports do not disturb the plain language of section 6426(d)(2) that, for purposes of section 6426, alternative fuel includes all liquefied petroleum gases, including butane.

Defendant may argue that tax legislation passed in December 2019 and a contemporaneous colloquy between Senators Grassley and Wyden bears on the interpretation of the alternative fuel mixture credit during the Taxable Quarters at Issue.  It is well-established that statements and views of individual members of Congress do not evidence the will of Congress or otherwise control in determining Congress' intent.  *See, e.g.*, *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history.").  And even if the 2019 colloquy is held to express Congress' intent, legislative history for a 2005 act cannot be retroactively created fourteen years later.  *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 559 U.S. 280, 297–98 (2010) (stating letter written by Senator Grassley thirteen years after passage of the amendments he sponsored did not qualify as legislative "history" and was "of scant or no value");  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 185

---

[16]    This Court has recognized that general explanation reports from the Joint Committee on Taxation, such as the 2005 report cited above, should be given "restrained readings" because they are published after the relevant tax legislation has been enacted.  *AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 67 Fed. Cl. 657, 677 (2005), *aff'd*, 481 F.3d 1351 (Fed. Cir. 2007); *see also id.* at 678 ("[T]he Federal Circuit has ruled that, '[a]s a post-enactment explanation, the Blue Book interpretation is entitled to little weight.'" (quoting *Fed. Nat'l Mortg. Ass'n v. United States*, 379 F.3d 1303, 1309 (Fed. Cir. 2004))).

(1994) ("[T]he interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute.").

When the legislative history of section 6426 is considered, it does not provide extraordinary evidence of a congressional intent to exclude butane from the definition of liquefied petroleum gas or alternative fuel for purposes of the alternative fuel mixture credit. Congress has consistently included liquefied petroleum gas as an alternative fuel under section 6426, and it has never excluded butane from the definition of liquefied petroleum gas or alternative fuel. When Congress has desired to exclude fuels from the definition of alternative fuel, it has done so in the flush language of section 6426(d)(2); butane is not and has never been included on that list. Congress intended to define alternative fuel to include liquefied petroleum gases, and butane is unquestionably a liquefied petroleum gas. The plain meaning of section 6426 cannot be set aside "on the strength of nothing more than suppositions about intentions or guesswork about expectations." *Bostock v. Clayton Cnty, Ga.*, 140 S. Ct. 1731, 1754 (2020).

### 2. The plain language of section 6426 does not lead to an absurd result that would allow the Court to look beyond the statutory text

Defendant has argued in the other alternative fuel mixture credit cases that it would be absurd to interpret section 6426 according to its plain meaning — that butane is a liquefied petroleum gas and, therefore, an alternative fuel. To the contrary, there is nothing absurd about reading the alternative fuel mixture credit according to its plain terms. The absurdity doctrine is to be applied sparingly in situations where adhering to the plain meaning of a statute "would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application." *Sturges v. Crowinshield*, 17 U.S. (4 Wheat.) 122, 202–03 (1819). Such restraint allows the legislative and judicial branches "to adhere to our respected, and respective, constitutional roles." *Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004). As the Supreme Court has cautioned, it is not

the courts' responsibility to "rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result." *Id.* (alternation in original) (citation omitted).  Instead, "[l]aws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts." *Griffin*, 458 U.S. at 575 (citation omitted).  When interpreting such statutes, the Federal Circuit has recognized that "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and . . . ingenuity and study . . . would discover." *Exec. Jet Aviation, Inc. v. United States*, 125 F.3d 1463, 1468 (Fed. Cir. 1997) (first alteration omitted) (quoting *Lynch v. Alworth Stephens Co.*, 267 U.S. 364, 370 (1925)).

Defendant has advanced two absurdity arguments in the other alternative fuel mixture credit cases:  that it is absurd to consider butane an alternative fuel for section 6426 because butane can also be characterized as a taxable fuel, and that it is absurd to consider butane an alternative fuel because it is traditionally present in crude oil and gasoline.  These arguments do not meet the high bar set by the absurdity doctrine.

**(a)     The fact that butane can be characterized as both an alternative fuel and a taxable fuel is not absurd**

The district court in *Vitol* determined that it would be absurd to consider butane an alternative fuel for purposes of section 6426 because butane separately constitutes a taxable fuel under section 4081 and the related regulations.  *See* Mem. & Recomm. at 7, *Vitol* (No. 4:18-cv-02275).  As described above, butane is characterized as a taxable fuel for purposes of the section 4081 excise tax by section 4083(a), which defines gasoline to include gasoline blend stocks. § 4083(a)(1)(A), (a)(2)(B).  Regulations define gasoline blend stocks to include butane.  Treas. Reg. § 48.4081-1(c)(2)(i)(B).  The district court reasoned that because butane could be

31

characterized as a taxable fuel, a taxpayer could blend together butane (an alternative fuel) with more butane (a taxable fuel) and seek the alternative fuel mixture credit under a plain reading of section 6426.  The district court determined that this outcome could not have been intended by Congress and therefore was absurd.  *See* Mem. & Recomm. at 7, *Vitol* (No. 4:18-cv-02275).

It is not absurd that butane is an alternative fuel under section 6426(d)(2) and can also be characterized as a taxable fuel for other purposes of the Code.  Section 6426(d)(2) specifically defines alternative fuel, "[*f*]*or purposes of this section*," to include liquefied petroleum gas without limitation.  (Emphasis added.)  In other words, the statute mandates that, for purposes of the tax credits in section 6426, butane is a type of alternative fuel – regardless of how butane is defined by the Code and regulations for the purposes of other sections.  Furthermore, section 4083's characterization of a fuel as a taxable fuel simply means that it may be subject to an excise tax under section 4081.  *See* §§ 4081(a)(1), 4083(a)(1).  As discussed throughout this memorandum, that tax treatment does not affect the characterization of a fuel as an alternative fuel for the alternative fuel mixture credit under section 6426(e), nor is there any reason why it should.

No rational taxpayer would be incentivized to seek the alternative fuel mixture credit for a mixture of butane and butane.  The alternative fuel mixture credit is a volumetric credit, meaning it is based on the number of gallons of alternative fuel used to provide the final mixture.  Specifically, section 6426(e) provides a 50 cent credit for each gallon of alternative fuel used in a mixture.  Therefore, rational taxpayers would prefer to characterize all butane in a particular mixture as alternative fuel to maximize the amount of the tax credit that can be claimed.

In the event that a taxpayer did seek a refund for a mixture of butane and butane, the Service could reject such a product on the grounds that it is not a mixture.  A "mixture" is

32

"something derived from combining two different compounds." *In re Mich. BioDiesel, LLC*, 466 B.R. 413, 418 (W.D. Mich. 2011); *see also Mixture*, Dictionary.com, https://www.dictionary.com/browse/mixture?s=t (defining "mixture" as "any combination or blend of different elements, kinds, qualities, etc."). By including a requirement that the taxpayer produce a "mixture," the statute controls for, and prohibits, the potential absurdity of a taxpayer presenting a "mixture" of one component with itself (e.g., butane with butane) to receive the alternative fuel mixture credit.

The rationale that a fuel cannot be an alternative fuel under section 6426 if it can also be a taxable fuel for purposes of another Code section would have impacts beyond butane; it would effectively remove from the section 6426(d)(2) definition of "alternative fuel" a number of other fuels that Congress clearly intended to be alternative fuels. The Service has taken steps to combat just such an outcome in the context of renewable diesel and the biodiesel mixture credit in section 6426(c). The biodiesel mixture credit is allowed for taxpayers who produce a mixture of biodiesel and diesel fuel. Congress has stated in section 40A(f)(1) that renewable diesel shall be treated in the same manner as biodiesel.[17] The Service in Notice 2007-37, 2007-1 C.B. 1002, recognized that renewable diesel can be treated as both biodiesel for purposes of section 6426(c) and diesel fuel for purposes of section 4083(a) (and as a result, a taxable fuel under the biodiesel mixture credit). To avoid the absurd result of a taxpayer producing a mixture of renewable diesel (as biodiesel) and renewable diesel (as diesel) and calling it a biodiesel mixture, the notice

---

[17]     This statutory language was required to bring renewable diesel into the scope of the biodiesel mixture credit because renewable diesel is not in fact biodiesel, and it was not previously defined as such. § 40A(d)(1). Butane, in contrast, has long been understood by the scientific community and fuel industry to constitute a liquefied petroleum gas. Therefore, Congress did not need to statutorily define liquefied petroleum gas to include butane because butane *is* a type of liquefied petroleum gas.

states that only "a mixture of renewable diesel and diesel fuel (other than renewable diesel)" constitutes a biodiesel mixture.  I.R.S. Notice 2007-37 § 2(b).  As further explained by the Service in Chief Counsel Advice 201144024 (Nov. 4, 2011), "renewable diesel is a taxable fuel under [section] 4083(a)(1) and is therefore is taxed in the same manner as a petroleum-based diesel" and "renewable diesel is treated as biodiesel for purposes of credits . . . under . . . [section] 6426."  Notice 2007-37 and Chief Counsel Advice 201144024 therefore confirm that a fuel may be defined as a taxable fuel and an alternative fuel, and that such treatment of a fuel is not absurd.  The district court in *Vitol* praised this approach:  "[t]his . . . statement clarifies how renewable diesel can sensibly be applied to Section 6426(c)'s biodiesel mixture credit.  The Notice avoids the absurd result that would occur if renewable diesel were treated as both a biodiesel and a diesel fuel within the definition of a biodiesel mixture."  Mem. & Recomm. at 10, *Vitol* (No. 4:18-cv-02275).

There is no reason why this same approach should not be applied to butane in the context of the alternative fuel mixture credit:  namely, allowing that an alternative fuel mixture is created by an alternative fuel and a taxable fuel (other than an alternative fuel), so that if butane is characterized as an alternative fuel in a particular mixture it cannot also be characterized as a taxable fuel.[18]  Such treatment is an easy and established way for the Service, and this Court, to give meaning to the language used by Congress in section 6426 to avoid finding that taxpayers have created mixtures of two taxable fuels.

A determination that a fuel that can be characterized as a taxable fuel cannot also be an alternative fuel would vitiate three other expressly-defined alternative fuels in section 6426(d).

---

[18]     If the Court agrees with Plaintiff that butane is always an alternative fuel for purposes of the alternative fuel mixture credit, it must necessarily conclude that Plaintiff's alternative claims for the Propane/Butane Mixture in Counts 17 through 32 fail.

Two of these can be broadly defined as "biomass-derived fuels":  "compressed or liquefied gas derived from biomass (as defined in section 45K(c)(3))" and "liquid fuel derived from biomass (as defined in section 45K(c)(3))."  § 6426(d)(2)(F), (d)(2)(G).  Congress explicitly identified these two types of biomass-derived fuel as alternative fuels for purposes of section 6426.  In some circumstances, however, biomass-derived fuels may be both an alternative fuel under section 6426 and a taxable fuel under section 4083.  Section 45K(c)(3) defines biomass to mean "any organic material other than – (A) oil and natural gas (or any product thereof), and (B) coal (including lignite) or any product thereof."  The biomass used to make fuel includes a variety of materials, such as wood and agricultural residue, waste vegetable oil, food products, and sewage. *See* EIA, *Biomass Explained*, https://www.eia.gov/energyexplained/biomass/ (last updated Aug. 28, 2020); EPA, *Bio-Based Products and Chemicals, Waste-to-Energy Scoping Analysis U.S. Environmental Protection Agency Office of Resource Conservation and Recovery* 4–5 (Apr. 2015), https://www.epa.gov/sites/production/files/2015-12/documents/bio-based_products_and_chemicals_waste-to-energy_scoping_analysis_04032015_508.pdf.[19]  The obvious benefit of biomass-derived fuel is that it is made from abundant domestic waste products, not foreign crude oil.  The chemical composition of biomass-derived fuel may include hexane and pentane,[20] which are listed as gasoline blendstocks in regulations.  *See* Treas. Reg. § 48.4081-1(c)(3)(i)(G), (c)(3)(i)(M).  So, like butane, hexane and pentane derived from biomass can be

---

[19]    *See also* Brief of Valero Marketing & Supply Co. as *Amicus Curiae* Supporting Appellant at 13, *Vitol, Inc. v. United States*, No. 20-20237 (5th Cir. July 27, 2020) ("The biomass-derived fuel in VMSC's case was made in the United States from rendered animal fats, used cooking oil, and inedible corn oil, each of which plainly qualifies as biomass under 26 U.S.C. § 45K(c)(3).").

[20]    *See* Brief of Valero Marketing & Supply Co. as *Amicus Curiae*, *supra* note 19, at 9 ("The portion of the biomass-derived fuel . . . that VMSC mixes with gasoline is made up almost entirely of hexane and pentane.").

characterized as both an alternative fuel under section 6426(d) and as a taxable fuel under section 4083.  However, hexane and pentane derived from biomass are undoubtedly fuels that qualify for the alternative fuel mixture credit under the statute's plain language.  *See* § 6426(d)(2)(F), (d)(2)(G), (e).

The third fuel that would be eviscerated from section 6426(d)(2)'s list of alternative fuels is liquid fuel derived from the Fischer-Tropsch (FT) process.  *See* § 6426(d)(2)(E).  The FT process generates liquid fuels by taking synthesis gas from coal and distilling it into gasoline, jet fuel, and diesel fractions.  *See* Caroline Burgess Clifford, Penn State College of Earth & Mineral Sciences, *Lesson 8.5 Fischer-Tropsch Process to Generate Liquid Fuels*, https://www.e-education.psu.edu/egee439/node/679 (last visited Nov. 11, 2020).  The resulting gasoline, jet fuel, and diesel fractions are the FT liquid fuels.  *See id.*  Section 6426(d)(2)(E) defines such FT liquid fuels as alternative fuels.  At the same time, gasoline, jet fuel (kerosene), and diesel fuel are also defined as taxable fuels under section 4083.  *See* § 4083(a)(1).[21]  The plain language of section 6426(d)(2), however, shows that Congress intended FT liquid fuels to be alternative fuels for purposes of section 6426.

---

[21]     Another part of section 6426, the alcohol fuel mixture credit, would also be limited if certain fuels cannot qualify as "alcohol" because they are also in some contexts considered "taxable fuels."  The alcohol fuel mixture credit provides a tax credit for a mixture of "alcohol" and taxable fuel.  § 6426(b)(3).  The term "alcohol," for purposes of the alcohol fuel mixture credit, has been defined by Congress to include "an alcohol gallon equivalent of ethyl tertiary butyl ether," also referred to as "ETBE."  *See* § 6426(b)(4)(A) (flush language).  ETBE, however, is a gasoline blendstock under Treasury regulations and, thus, a taxable fuel.  *See* Treas. Reg. § 48.4081-1(c)(3)(i)(F).  Alcohol is therefore no different from butane — both are sometimes taxable fuels.  And just as alcohol is specifically identified as a substance for which a credit is allowed, liquefied petroleum gas, including butane, is specifically identified as a substance for which the alternative fuel mixture credit is allowed.

Butane, biomass-derived fuels, and FT liquid fuels are expressly identified by Congress as alternative fuels for section 6426 and must be treated as such. A judicial determination to the contrary would destroy Congress' carefully crafted statutory scheme for fuel tax credits. This statutory violence can be avoided by giving meaning to the plain language of section 6426 and recognizing that butane is an alternative fuel. *Exec. Jet Aviation*, 125 F.3d at 1468 ("[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and . . . ingenuity and study . . . would discover." (alterations in original (citation omitted))).

    **(b)**       **The fact that butane is present in crude and present in some produced gasoline is not absurd**

The district court in *Vitol* and the District Court for the Eastern District of Wisconsin in *U.S. Venture* both held that the absurdity of section 6426(d) was compounded in the case of a taxpayer seeking the alternative fuel mixture credit for a mixture of butane (as the alternative fuel) and gasoline (as the taxable fuel) because butane is and has historically been present in crude oil and gasoline. Mem. & Recomm. at 7, *Vitol* (No. 4:18-cv-02275) (determining that crude oil is the main precursor to the production of gasoline, and "[b]utane is present in most, if not all, gallons of gasoline sold in the United States"); Decision and Order 7, *U.S. Venture* (No. 1:18-cv-01757) (determining "butane is present in most, if not all, gallons of traditional gasoline sold in the United States. It would be unreasonable to conclude that butane is both an alternative fuel and a taxable fuel for purposes of the alternative fuel mixture credit, given that butane has been an additive to gasoline and is listed as a blend stock in § 48.4081-1(c)(3)(B)"). Therefore, the district court found that allowing butane to be characterized as an alternative fuel would mean Congress had intended to "incentivize the production of gasoline that was already being produced without change." Mem. & Recomm. at 8. These arguments do not meet the high bar

37

for absurdity because they fail to consider the reality of the refining process and the purpose of volumetric credits such as the alternative fuel mixture credit.

Although it is true that there is some naturally occurring butane in crude, that fact is irrelevant to the actions taken by taxpayers like Plaintiff to produce a mixture that includes butane and gasoline. As discussed above, Plaintiff's refinery underwent a complex process to distill crude into component parts, including butane. Butane was also produced from subsequent production units. This produced butane — as well as butane that was purchased and had no relation to the crude processed by Plaintiff — was stored in spheres separate from the other gasoline components before being blended into gasoline. If crude, with its inherent butane, could be used as a fuel without further processing, refineries like Plaintiff would have no incentive to process that crude into gasoline for sale to customers.

Gasoline blending was also a complex process. As explained above, the refinery intentionally selected components that were blended together to produce gasoline. Gasoline must meet specific volatility requirements, which do not specify that gasoline include a specific amount of butane. In some circumstances, the volatility requirements preclude refineries from blending any butane with gasoline. *See, e.g.*, 40 C.F.R. § 80.82(e)(2) (prohibiting butane from being blended with RBOBs between April 1 and September 30). Plaintiff invested a great amount of time and resources to optimize the amount of butane in the gasoline mixture while also meeting the relevant volatility requirements. Plaintiff always had a choice of whether to blend butane into finished gasoline and, if it did so, in what quantities. Plaintiff even on occasion sold excess butane that it determined it did not need for the production of gasoline. There were some months when Plaintiff did not add butane to its gasoline blends at all.

The congressional intent to provide a tax credit for such blending activities would be frustrated by a judicial decision to deny the alternative fuel mixture credit for a mixture of butane and gasoline because butane may have been a component of gasoline prior to the credit's enactment in 2005 and is often a component of gasoline.  As Defendant has conceded in *Vitol*, butane is not "disqualified" from the credit by virtue of its historical use as a fuel.[22] Furthermore, the alternative fuel mixture credit is a volumetric credit.  Volumetric credits are specifically used to incentivize taxpayers to use a greater amount of the item that is subject to the credit.  Section 6426 includes three volumetric excise tax credits for mixtures that include "alcohol," "biodiesel," and "alternative fuels."  When Congress enacted the first of those credits, the alcohol fuel mixture credit, it specifically recognized that alcohol historically had been blended with gasoline, and enacted the alcohol fuel mixture credit to incentivize the use of greater volumes of alcohol in mixtures with gasoline.[23]  In that regard, the Joint Committee on Taxation stated that, under prior law:

> [T]he maximum benefit per unit of alcohol was obtainable for mixtures in which the alcohol constituted 10 percent.  There was no incentive to make the alcohol a greater percentage of the fuel. . . .
>
> . . . Since [the alcohol fuel mixture] credit is measured by the amount of alcohol used in these fuels, it provides additional incentives use more than 10 percent alcohol in gasohol. . . .[24]

For butane, the alternative fuel mixture credit similarly incentivizes taxpayers to increase the amount of butane they mix with gasoline.  As a result, the alternative fuel mixture credit

---

[22]  *See* Brief for the Appellee at 44, *Vitol, Inc. v. United States*, No. 20-20237 (5th Cir. Sept. 10, 2020), ECF No. 19.

[23]  *See* Crude Oil Windfall Profit Tax Act of 1980, Pub. L. No. 96-223, 94 Stat. 229.

[24]  *See* Staff of the Joint Comm. on Taxation, 96th Cong., General Explanation of the Crude Oil Windfall Profit Tax Act of 1980, at 89 (JCS-1-81) (Comm. Print Jan. 29, 1981).

furthers the legislative purpose of the fuel tax scheme by reducing the United States' dependence on foreign oil.  Congress' clear intent would thwarted, however, by a determination that butane is not an alternative fuel for purposes of section 6426.

## VI.    CONCLUSION

Under the plain language of section 6426(d)(2), "alternative fuel" includes "liquefied petroleum gas," which is ordinarily defined to include butane.  Butane is therefore an alternative fuel for purposes of the alternative fuel mixture credit.  This conclusion follows from the clear and unambiguous language of section 6426, which does not define or limit the types of liquefied petroleum gases that qualify as alternative fuels.  Despite Defendant's arguments to the contrary, there is no reason to reject the plain language used by Congress in section 6426.  Plaintiff therefore respectfully requests that the Court grant Plaintiff's motion for partial summary judgment and hold that, as a matter of law, butane is a liquefied petroleum gas and, by extension, an "alternative fuel" for purposes of the alternative fuel mixture credit under section 6426(e).

Respectfully submitted,

November 12, 2020

/s/  Armando Gomez
ARMANDO GOMEZ
Attorney of Record for Plaintiff
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, D.C. 20005
Tel: (202) 371-7868
Fax: (202) 661-8284
Email: armando.gomez@skadden.com

*Of Counsel:*

/s/  David W. Foster

/s/  Jaclyn Roeing

40