IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 19-510 T

(Judge Edward H. Meyers)

PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant.

_____

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

_____

DAVID A. HUBBERT
   Deputy Assistant Attorney General

DAVID I. PINCUS
G. ROBSON STEWART
JASON BERGMANN
COURTNEY M. HUTSON
PATRICK PHIPPEN
   Attorneys
   Justice Department (Tax)
   Court of Federal Claims Section
   P.O. Box 26
   Ben Franklin Post Office
   Washington, D.C. 20044
   (202) 616-3425
   (202) 514-9440 (E-Fax)
   jason.bergmann@usdoj.gov

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................ 1

ARGUMENT .................................................................................................................................. 4

    A.      The clarification to § 6426(e) was not "wholly new." ................................................ 6

    B.      The clarification was curative and resolved uncertainty in the law ........................... 6

    C.      Congress acted promptly, and the period of retroactivity was modest ....................... 8

    D.      PES did not blend butane into gasoline in 2017 with any reasonable expectation that it would be entitled to the tax credit ................................................ 12

    E.      The clarification was remedial in nature .................................................................... 13

    F.      The clarification was justified by rational legislative purposes ................................. 14

CONCLUSION ............................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Cansius College v. United States*, 799 F.3d 18 (2d Cir. 1986)...................................................9

*Commonwealth Edison Co. v. United States*, 271 F.3d 1327 (Fed. Cir. 2001) ............3, 5, 6, 9

*GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136 (Fed Cir. 2015) ..........................*passim*

*Kitt v. United States*, 277 F.3d 1330 (Fed. Cir. 2002) .........................................................3, 7

*Licari v. Commissioner*, 946 F.2d 690 (9th Cir. 1991) .............................................................9

*Mangano Co. v. Hamilton*, 292 U.S. 40 (1934)........................................................................4

*Montana Rail Link, Inc. v. United States*, 873 F. Supp. 1415 (D. Mont. 1994)......................9

*NationsBank of Texas v. United States*, 269 F.3d 1332 (Fed Cir 2001).........................3, 5, 15

*Schaeffler Group USA, Inc. v. United States*, 786 F.3d 1354 (Fed. Cir. 2015)....................3-4

*Shami v. Commissioner*, 741 F.3d 560 (5th Cir. 2014) ..........................................................17

*Sunoco, Inc. v. United States*, 129 Fed. Cl. 322 (2016)..........................................................16

*Swayne & Hoyt, Ltd. v. United States*, 300 U.S. 297 (1937)....................................................8

*United States v. Carlton*, 512 U.S. 26 (1994)..................................................................*passim*

*United States v. Hemme*, 476 U.S. 558 (1986) .........................................................................6

*Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976)......................................................12n

*Valero Marketing and Supply Co. v. United States*, No. 5:19-cv-00328,
   Order Granting Motion for Partial Judgment on the Pleadings,
   (W.D. Tex. July 31, 2020)...........................................................................................*passim*

*Wiggins v. Commissioner*, 904 F.3d 311 (5th Cir. 1990) ..........................................................7

*Zaber v. City of Dubuque*, 789 N.W.2d 634 (Iowa 2010) ........................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes:**

Bipartisan Budget Act of 2018, P.L. No. 115-123, 132 Stat. 64 (2018) ...........................11, 13

Further Consolidated Appropriations Act, 2020, P.L. No. 116-94,
133 Stat. 2534 (2019) ........................................................................................................ 1-2

**Other Authorities:**

165 Cong. Rec. S7185 (daily ed. Dec. 19, 2019) ............................................................*passim*

H.R. Rep. 116-379 (2020) ................................................................................................*passim*

Revenue Ruling 2018-02, 2018-2 I.R.B. 277 .................................................................*passim*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 19-510 T

(Judge Edward H. Meyers)

PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant.

_____

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

_____

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This is one of many cases where gasoline producers seek alternative fuel mixture credits under I.R.C. § 6426(e) for the production of "ordinary gasoline based on the amount of butane mixed in." 165 Cong. Rec. S7185 (daily ed. Dec. 19, 2019) (Ex. 42).[1] "The oil industry is litigating this issue in the hopes of winning a nearly $50 billion windfall for producing gasoline the same way they have for a century." *Id.* In this case alone, Philadelphia Energy Solutions seeks more than $550 million of excise-tax credits based on its alleged production of a "fuel mixture consisting of butane and gasoline." (Dkt. No. 12, ¶ 2.)

Believing that the "benefit some in the oil and gas industry are seeking from [§ 6426(e)] is illegitimate," 165 Cong. Rec. S7185, Congress barred alternative fuel mixture claims for

---

[1] Exhibit numbers ("Ex.") refer to exhibits that the United States previously filed in support of its cross motion for summary judgment, Dkt. Nos. 53 & 54.

mixtures of butane into gasoline. Section 133 of the Further Consolidated Appropriations Act, 2020, P.L. No. 116-94, § 133, 133 Stat. 2534, 3233–34 (2019) (Ex. 45), signed into law on December 20, 2019, revived the alternative fuel mixture credit retroactive to January 1, 2018, and extended the credit through December 31, 2020. The 2020 Appropriations Act also clarified the substances that qualify as "alternative fuel" for the credit. Specifically, the law included a "CLARIFICATION OF RULES REGARDING ALTERNATIVE FUEL MIXTURE CREDIT," which removed mixtures of liquefied petroleum gas and taxable fuel from the "alternative fuel mixtures" that qualify for the tax credit. P.L. No. 116-94, § 133(b)(1). The clarification "more explicitly den[ied] the credit for butane mixed with gasoline, consistent [with] congressional intent." 165 Cong. Rec. S7185.

The clarification applied to "fuel sold or used before" its enactment, where "claims for the credit" had "not been paid or allowed as of" December 20, 2019 (the date of enactment of the 2020 Appropriations Act) and where the claims "were made on or after January 8, 2018." P.L. No. 116-94, § 133(b)(2)(B). January 8, 2018 was the date that the IRS formally published Revenue Ruling 2018-02, 2018-2 I.R.B. 277 (Ex. 44), which recognized that "a mixture of butane . . . and gasoline" is "not an alternative fuel mixture and does not qualify for the alternative fuel mixture credit under § 6426(e) of the Code."[2] That "formal revenue ruling [had] put[] taxpayers on notice that a mixture of butane and gasoline does not qualify for the credit." 165 Cong. Rec. S7185. Congress agreed that "[t]he IRS got the law correct when it issued Revenue Ruling 2018-2." *Id.*

Counts Thirteen through Sixteen of the Amended Complaint seek alternative fuel mixture credits for all four quarters of 2017 based on allegations that PES had produced a "fuel mixture

---

[2] The IRS previously released Rev. Rul. 2018-2 to the public on December 15, 2017.

consisting of butane and gasoline." (Dkt. No. 12, ¶ 2.) PES first made claims for those quarters

on October 16, 2018, over nine months *after* the IRS had published the revenue ruling. (*Id.*,

¶¶ 9(e), 45 & Ex. N.) Under the clarification of § 6426(e), the Code disallows tax credits for such

mixtures, and the Court should enter judgment on the pleadings for defendant on that basis.[3]

  PES apparently concedes that its claims are barred by the statutory clarification, but it

opposes defendant's motion on the ground that the "2020 Appropriations Act violates the Due

Process Clause of the Fifth Amendment to the United States Constitution." (PES Resp.

[Dkt. 52-1] at 2.) That argument relies almost exclusively on *United States v. Carlton*, 512 U.S.

26 (1994), a case in which the Supreme Court had rejected a similar due-process challenge to a

retroactive estate-tax statute and which, when applied here, calls for the same outcome.

  Notably, PES declined to address (or even acknowledge) five subsequent Federal Circuit

opinions that applied *Carlton* to uphold the constitutionality of retroactive economic and tax

legislation. *See NationsBank of Texas v. United States*, 269 F.3d 1332 (Fed Cir. 2001) (rejecting

due-process challenge to retroactive increase of estate-tax rate from fifty percent to fifty-five

percent); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327 (Fed. Cir. 2001) (rejecting

due-process challenge to retroactive application of special assessments for the decontamination

and decommissioning of nuclear enrichment facilities); *Kitt v. United States*, 277 F.3d 1330

(Fed. Cir. 2002) (rejecting due-process challenge to retroactive application of tax to non-

qualified withdrawals from Roth IRA accounts); *GPX Int'l Tire Corp. v. United States*, 780 F.3d

1136 (Fed Cir. 2015) (rejecting due-process challenge to retroactive imposition of tariffs on

previously imported goods); *Schaeffler Group USA, Inc. v. United States*, 786 F.3d 1354

---

[3] Defendant earlier moved for judgment on the pleadings on Counts Seventeen through Thirty-Two of the Amended Complaint. Because PES has since agreed to dismiss those counts with prejudice (Dkt. 51), that portion of defendant's motion is now moot.

(Fed. Cir. 2015) (rejecting due-process challenge to retroactive application of petition support provision in Continued Dumping and Subsidy Offset Act of 2000). Those Federal Circuit cases confirm even further the propriety of the retroactive clarification to § 6426(e).

Moreover, while PES (at 5) referred to *Valero Marketing and Supply Co. v. United States*, W.D. Tex. No. 5:19-cv-00328, a case in which a gasoline producer is seeking alternative fuel mixture credits based on the blending of butane into gasoline, PES neglected to mention that the district court in *Valero* had granted a motion by the United States for partial judgment on the pleadings based on the statutory clarification to § 6426(e). *Valero Mktg. & Supply Co. v. United States*, No. 5:19-cv-00328, Order Granting Motion for Partial Judgment on the Pleadings, Dkt. 38 (W.D. Tex. July 31, 2020) (Ex. 46) (hereinafter, "*Valero* Order"). The district court in *Valero* rejected the same arguments that PES makes here and held "that the 2019 clarification amendment is consistent with the Due Process Clause of the Fifth Amendment." *Id.* at 22. As the United States will show, the Court should reach the same result here.

## ARGUMENT

The Due Process Clause of the Fifth Amendment provides, in part, that "[n]o person shall be . . . deprived of property, without due process of law . . ." The Supreme Court has made clear that, "[e]xcept in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution." *Mangano Co. v. Hamilton*, 292 U.S. 40, 44 (1934).

Retroactivity is a common feature of tax legislation. The Supreme Court recognizes that Congress almost always enacts tax legislation with retroactive effective dates. *Carlton*, 512 U.S. at 32-33. And the Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge." *Id.* at 30 (citing *United States v. Darusmont*, 449 U.S. 292 (1981); *United*

*States v. Hemme*, 476 U.S. 558 (1986); *Welch v. Henry*, 305 U.S. 134 (1938); *Milliken v. United States*, 283 U.S. 15 (1931)).

The due-process standard for tax statutes with retroactive effect is the same as the standard that governs all retroactive economic legislation. *Id.* at 30. Neither tax nor economic legislation, whether retroactive or prospective, contravenes the Due Process Clause so long as such legislation is "justified by a rational legislative purpose." *Id.* at 31 (quoting *Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 729-730 (1984). As the Federal Circuit has recognized, due process is satisfied "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Commonwealth Edison*, 271 F.3d at 1341 (citing *Pension Benefit Guaranty*, 467 U.S. at 730).

Statutes "adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *NationsBank*, 269 F.3d at 1337 (quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976)). Thus, under the "rational purpose standard," it "will be a rare circumstance where federal legislation that is retroactive will be held unconstitutional under the Due Process Clause." *Commonwealth Edison*, 271 F.3d at 1342.

The Federal Circuit has identified five "considerations that are relevant to the rational basis analysis" of retroactive statutes "under the Due Process Clause": (1) whether the retroactive provision is "wholly new," (2) whether the retroactive action resolves uncertainty in the law; (3) the length of the period of retroactivity; (4) whether the affected party had notice of the potential change prior to the conduct that was retroactively regulated; and (5) whether the retroactive provisions are remedial in nature." *GPX Intern. Tire Corp. v. United States*, 780 F.3d

1136, 1142 (Fed. Cir. 2015). While none of these factors alone is dispositive, all five weigh

heavily against finding a due-process violation here.

**A.      The clarification to § 6426(e) was not "wholly new."**

In *United States v. Hemme*, 476 U.S. 558, 568 (1986), the Supreme Court distinguished

between the "creation of a wholly new tax" and "amendments that bring about certain changes in

operation of tax laws" in "assessing the constitutionality" of retroactive tax legislation. While

some *Lochner*-era Supreme Court cases had invalidated retroactive taxes under the Due Process

Clause, if those cases are even relevant at all "to present day challenges to retroactive statutes,"

those cases were limited to situations involving a "wholly new tax." *Commonwealth Edison*,

271 F.3d at 1342 (citing *Carlton*, 512 U.S. at 34). Here, the clarification to § 6426(e) merely

addressed the circumstances under which taxpayers could claim alternative fuel mixture credits

against the fuel-excise tax under § 4081. It did not create "a 'wholly new' law, but rather one

'that bring[s] about certain changes in operation' of preexisting" excise tax-credits. *GPX*,

780 F.3d at 1142 (quoting *Hemme*, 476 U.S. at 568).

**B.      The clarification was curative and resolved uncertainty in the law.**

Congress enacted the retroactive clarification because of its belief that "the benefit some

in the oil and gas industry are seeking from [the alternative fuel mixture credit] is illegitimate."

165 Cong. Rec. S7185. Uncertainty arose when "promotional literature appeared urging

taxpayers to assert on amended returns that butane (a standard component chemical present in all

gasoline), when blended with gasoline, constituted an alternative fuel mixture." H.R. Rep. 116-

379 at 61 (2020) (explaining parallel House Bill (H.R. 3301)). Further uncertainty was created

when taxpayers "filed several lawsuits recently challenging the IRS position that mixtures of

butane and gasoline do not qualify for the alternative fuel mixture credit." *Id.* at 61 n. 182. With

a desire "to provide clarity in this area" and "to protect the public purse," Congress enacted the clarification to "the alternative fuel mixture credit to more explicitly deny the credit for butane mixed with gasoline, consistent [with] Congressional intent." 165 Cong. Rec. S7185. Congress therefore clarified the law "to protect the public fisc and to prevent a windfall resulting from erroneous interpretations of the law." H.R. Rep. 116-379 at 62.

Retroactive amendments to tax statutes are consistent with due process when "adopted as a curative method." *Kitt*, 277 F.3d at 1335 (citing *Carlton*, 512 U.S. at 31). Legislation designed to cure errors in the drafting of tax legislation, or to close loopholes unintentionally created in the legislative process, are especially fit subjects for retroactive treatment. *See Carlton*, 512 U.S. at 31-32 (holding that Congress acted rationally when it enacted retroactive "curative" legislation "to correct what it reasonably viewed as a mistake . . ."). "Where legislation is curative, retroactive application may be constitutional despite a long period of retroactivity." *Wiggins v. Commissioner*, 904 F.3d 311, 316 (5th Cir. 1990) (citing *Cansius College v. United States*, 799 F.3d 18, 27 (2d Cir. 1986)).

The clarification to § 6426(e) clearly qualifies as a curative measure, as the district court held in *Valero*:

> Upon consideration, the Court agrees with the Government that the 2019 clarification is a curative measure designed to reduce or eliminate ambiguity or mistake in an otherwise applicable law. As in *Carlton*, without the 2019 clarification, the original provision "would have created a significant and unanticipated revenue loss" to the U.S. Treasury. *See* 512 U.S. at 32. Furthermore, like *Carlton*, there is "no plausible contention that Congress acted with an improper motive, as by targeting [the taxpayer]." *Id.* And, given the evidence presented to the Court that refund claims such as the ones Valero makes in this case were only recently filed within the last four or so years, the Court finds that Congress acted promptly in enacting the 2019 clarification in order to cure the potential windfall large oil and gas companies might receive from "the

> refund of monies *already collected and spent*." *See Zaber* [*v. City of*
> *Dubuque*, 789 N.W.2d 634, 646 (Iowa 2010)].

*Valero* Order at 21-22 (emphasis and brackets in original). Indeed, the clarification has many

common characteristics of curative acts. It works to "avoid the refund of monies *already*

*collected and spent*, as opposed to merely raising revenue." *Zaber*, 789 N.W.3d at 646 (emphasis

in original). And, by barring claims not yet "paid or allowed," the clarification ratifies the

administrative treatment of such claims by the IRS. *See Swayne & Hoyt, Ltd. v. United States*,

300 U.S. 297 (1937) (holding "retroactive application of curative act" proper when ratifying acts

previously taken by administrative agencies).

**C.     Congress acted promptly, and the period of retroactivity was modest.**

In *GPX*, 780 F.3d at 1142, the Federal Circuit identified the "length of the period of

retroactivity" as a consideration relevant to the rational-basis analysis under the Due Process

Clause. Here, the statute applied retroactively from December 20, 2019 (when Congress enacted

the statutory clarification) to January 8, 2018 (when the IRS published Revenue Ruling 2018-2).

The period of retroactivity extended just to the year preceding the legislative session in which

Congress had enacted the clarification. Because "Congress established only a modest period of

retroactivity," the clarification to § 6426(e) passes muster under the Due Process Clause.

*Carlton*, 512 U.S. at 32.

PES argues (at 8-9) that the clarification's period of retroactivity "exceeds due process

limits," because it extends "more than two years." But PES does not cite any controlling opinion

that imposes a *per se* rule limiting the retroactive effect of tax legislation to a period of two years

or less. (*See* PES Resp. at 8-11.) While PES references an isolated statement from the concurring

opinion of Justice O'Connor in *Carlton*, 512 U.S. at 38-39, the majority there held that the due

process standard "is met *simply* by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Id.* at 31-32 (emphasis added).

While the length of the retroactivity period is one factor that courts may consider in a due-process inquiry, there is no categorical time beyond which a retroactivity period may never extend. As the district court explained in *Valero*, "Justice O'Connor's comments were not meant to amount to a per se rule in all cases of every variety involving taxes." *Valero* Order at 15-16 (citing numerous cases). Indeed, courts have upheld much longer periods of retroactivity in tax legislation. *See, e.g., Montana Rail Link, Inc. v. United States*, 873 F. Supp. 1415, 1421 (D. Mont. 1994) (rejecting due-process challenge to tax amendment with retroactive application of up to six years); *Licari v. Commissioner*, 946 F.2d 690, 6954 (9th Cir. 1991) (rejecting due-process challenge to tax legislation with "four-year period of retroactivity"); *Cansius College v. United States*, 799 F.3d 18, 27 (2d Cir. 1986) (holding, where tax legislation "retroactively affects approximately a four-year period," that "retroactive application of the provision is not impermissible," despite "the lengthy period affected").

Notably, in *GPX*, 780 F.3d at 1143, the Federal Circuit rejected a due-process challenge to the retroactive imposition of tariffs on previously imported goods when "the new law applie[d] retroactively for a period of a little over five years." Furthermore, in *Commonwealth Edison*, 217 F.3d at 1345-46, the Federal Circuit recognized that "even severe obligations for past acts" may "be found rational" and held "constitutional under the Due Process Clause," when rational for Congress to do so. There, Congress properly levied retroactive special assessments based on uranium processing performed over a 23-year time period. *Id.* PES is simply wrong that a period of retroactivity must be limited to two years or less.

–9–

PES compounds the error by insisting that the period of retroactivity in this case extends beyond two years and could be as long as fourteen years.[4] This argument is based on the faulty premise that it is the date of the blending activity instead of the date of the tax-credit claim that matters for the due-process inquiry. But the filing of a claim is an intentional act by the taxpayer, one that Congress could rationally presume that a taxpayer would do in short order if the taxpayer had produced an alternative fuel mixture with the expectation of receiving the tax credit. A tax credit cannot be allowed until after the taxpayer has made a claim for it. In evaluating whether the retroactivity period here comports with due process, the Court should measure the period by the language that Congress used, which hinges on the date of the claim. As so understood, the clarification falls within the artificially short two-year period that PES claims is necessary for due process.

But even if PES were correct that the Court should measure the retroactivity period based on the date of the activity instead of the date of the claim, the period would still comport with due process as a rational means to achieve a legislative purpose. As the district court held in *Vitol*, the statutory clarification "was a reasonable fit with the[] legislative purposes" to "protect the public fisc," "provide clarity in the area," and clarify Congress's intent that "gasoline [should not] qualify for the credit based on its butane content." *Valero* Order at 17 (quoting 165 Cong. Rec. S7185). PES "has not demonstrated why these purposes are advanced by making the period of retroactivity only one or two years, but not five years." *Id.* For taxpayers like PES who

---

[4] There is no reason to lend any credence to the fanciful hypothetical scenario in which the period of retroactivity amounts to fourteen years. (PES Resp. at 10 n. 4.) Those are not the facts here, where the clarification applies retroactively to claims made on or after January 8, 2018, to bar tax credits for butane allegedly blended into gasoline between January 1, 2017, and December 31, 2017. But, even if a hypothetical fourteen-year claimant did exist, its failure to claim the credit for over a decade would belie any inference that the claimant had blended butane in reliance on the credit, and it would remove any due-process concern.

blended butane into gasoline in 2017 but who failed to make claims before January 8, 2018, it is clear that Congress had rational concerns about the nature of such claims, concerns that justified the retroactive application of the clarification to those activities.

Nor is PES correct that Congress had failed to act "promptly to retroactively exclude liquefied petroleum gases, including butane, from the list of alternative fuels for purposes of the alternative fuel mixture credit." (PES Resp. at 15.) The clarification was prompt and timely because taxpayers only began to make refund claims based on the blending of butane into gasoline in recent years, and those claims did not result in litigation until 2018.

During the first ten years after its enactment, gasoline producers did not claim that their use of butane to make "conventional gasoline" qualified for the alternative fuel mixture credit. H.R. Rep. 116-379 at 61; 165 Cong. Rec. S7185. Beginning in late 2016, however, a tax-scheme promotion urged them to claim the credit on amended excise-tax returns. H.R. Rep. 116-379 at 61. After those claims had begun to accumulate, the IRS published Revenue Ruling 2018-2 on January 8, 2018, to address the meritless legal argument and to advise the public that the blending of butane into gasoline does not qualify for the tax credit.

On February 9, 2018, Congress revived the alternative fuel mixture credit retroactively for the period between January 1, 2017, and December 31, 2017. *See* Bipartisan Budget Act of 2018, P.L. No. 115-123, § 40415, 132 Stat. 64, 152. While Congress did not then amend § 6426 to provide specifically that mixtures of butane into gasoline do not qualify for the tax credit, that fact is not relevant to the due-process question. It was certainly rational for Congress to believe that taxpayers would accept the interpretation of the statute in Revenue Ruling 2018-2 that Senator Grassley later characterized as "correct." 165 Cong. Rec. S7185. It was only after taxpayers such as PES had persisted in their claims, and subsequently filed lawsuits such as this

one, that Congress recognized the need for a curative, statutory clarification, and it acted

promptly thereafter.

**D.     PES did not blend butane into gasoline in 2017 with any reasonable expectation that it would be entitled to the tax credit.**

In considering whether the "affected party had notice of the potential change prior to the

conduct that was retroactively regulated," *GPX*, 780 F.3d at 1142, the Federal Circuit examines

whether the taxpayer "detrimentally relied on the prior state of the law." *Id.* at 1143. Here, there

was no such reliance, and the retroactive application of the clarification to the butane that PES

used to make gasoline in 2017 therefore did not contravene its due-process rights.[5]

Like all gasoline producers, PES incorporated butane into gasoline for two primary

reasons: (1) butane increases the vapor pressure of gasoline, and (2) the use of butane is highly

profitable because it is cheaper than all other gasoline blend stocks. (PES Resp. Int. 1 [Dkt. No.

50-22 at A-665–A-667].) For these reasons, PES had "a significant economic incentive" to

"blend[] butane into the gasoline pool," even absent the alternative fuel mixture credit. (Ex. 3 at

23.) The economic incentive was so strong that PES "formulated the daily recipe to maximize

the amount of butane that could be blended." (PES Resp. Int. 1.) PES first learned of the tax-

scheme promotion to claim alternative fuel mixture credits for butane used to produce gasoline in

April of 2017, and those tax credits could not have affected the amount of butane it used

previously. (PES Resp. Int. 2 [Dkt. 50-22 at A-669].) But even afterwards, the possibility of

---

[5] Retroactive legislation that is rationally drawn to achieve a legitimate purpose does not violate the Due Process Clause even if the statute imposes a liability that "was not anticipated" or "upsets otherwise settled expectations" and "even though the effect of the legislation is to impose a new duty or liability based on past acts." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 (1976). Thus, while the absence of reliance is a factor that courts may consider in resolving the due-process inquiry in the government's favor, the presence of detrimental reliance does not mean that the retroactive legislation offends due process.

those tax credits "did not change the way [the] organization functioned," and "did not affect the amount of butane that the PES refinery blended into gasoline." (Eggert Depo. 130:4-130:10.)

Moreover, when PES added blending butane to other gasoline blend stocks to produce gasoline throughout 2017, the alternative fuel mixture credit was *expired*. PES cannot have blended butane into gasoline in 2017 in reliance on the tax credit, because the credit was not then in effect. While Congress did reinstate the tax credit for the period between January 1, 2017, and December 31, 2017, it did not do so until February of 2018, and it did so retroactively. P.L. No. 115-123, § 40415. By then, the IRS had already published Revenue Ruling 2018-2, which had "put[] taxpayers on notice that a mixture of butane and gasoline does not qualify for the credit." 165 Cong. Rec. S7185. And PES also knew beforehand, from the denial of its application for an "AM" registration, of the IRS position that "butane and gasoline mixtures are not alternative fuel mixtures for purposes of the alternative fuel mixture credit." (Exs. 9, 10.) Under these circumstances, PES simply cannot suggest that it blended butane into gasoline in 2017 with a reasonable expectation that it would be entitled to the tax credit.

The clarification does not impose a tax or increase a tax on prior activities by PES. It merely limits the ability of PES to obtain a refund of excise taxes already paid using a special tax credit that had previously expired and was reinstated retroactively, and which the IRS had advised both PES and the general public did not apply to the blending activities in question. In essence, PES complains that Congress retroactively took away a retroactive gift before PES could take advantage of that yet unconsummated gift. That is hardly a due-process violation.

**E.     The clarification was remedial in nature.**

In considering whether "retroactive provisions are remedial in nature," the Federal Circuit examines whether they had a "remedial" purpose, "as opposed to raising government

–13-

revenue." *GPX*, 780 F.3d at 1142, 1144. While the clarification to § 6426(e) was motivated in part by a desire "to protect the public purse," it was also intended to "promote the use of nontraditional fuels . . . for transportation and other purposes." 165 Cong. Rec. S7185. The clarification rejected an "erroneous interpretation[] of the law," because "Congress never intended to incentivize [the] widespread and established practice [of using butane as an ingredient] in the production of conventional gasoline necessary to meet environmental and performance standards." H.R. Rep. 116-379 at 61-62. As Senator Wyden aptly explained, "[t]he idea that Congress intended oil companies to benefit from a credit intended to reduce our dependence on traditional gasoline doesn't pass the commonsense test." 165 Cong. Rec. S7185. The clarification to § 6426(e) allowed Congress to "extend the incentives" for alternative fuel mixtures, in order "to encourage the use and development of alternative motor fuels as substitutes for traditional motor fuels." H.R. Rep. 116-379 at 62.

**F.      The clarification was justified by rational legislative purposes.**

The retroactive clarification to § 6426(e) has the rational legislative purposes of "protect[ing] the public purse," "provid[ing] clarity in this area," and clarifying Congress's intent that "gasoline [should not] qualify for this credit based on its butane content." 165 Cong. Rec. S7185. Senators Grassley and Wyden expressed these purposes in statements they made on the Senate floor before Congress enacted the clarification.

Senator Grassley stated that the credit "is intended to promote the use of nontraditional fuels, such as compressed natural gas and biomass-based fuels, for transportation and other purposes," but that "some in the oil industry have sought to turn this credit on its head by claiming the credit for ordinary gasoline based on the amount of butane mixed in." *Id.* The

senators noted that "[a]ll gasoline includes butane," and that "[a]dding butane during the gasoline refining process is simply how gasoline is produced." *Id.*

Senator Grassley further discussed how he was "the chairman of the Senate Finance Committee when the alternative fuel mixture credit was enacted in 2005 as part of a surface transportation bill," and that "[d]uring that time, there was great interest in reducing our dependence on foreign oil and traditional fuels." *Id.* He explained that the tax credit "was added to reduce that dependence, not to provide a handout to large oil and gas companies," and that "if anyone had thought that oil companies could qualify for this credi[t]" based on activities "they already engaged in, the credit would have never been enacted." *Id.* Senator Grassley stated that "not only would I have objected on policy grounds, but the Joint Committee on Taxation's revenue score associated with the provision would have been so large that passage wouldn't have been feasible." *Id.* Senator Wyden agreed, noting that "given the significant amount of tax dollars at stake," it is important for Congress to provide clarity in this area, to protect the public purse." *Id.*  The district court in *Valero* agreed that "[t]hese legislative purposes were rational and reasonable." *Valero* Order at 11 & n.1; *see also NationsBank*, 269 F.3d at 1337 (recognizing that the correction of "a mistake that had afforded an unjustified tax loophole" constituted a "rational legislative purpose" that justified a retroactive tax amendment).

PES argues that there was no rational basis for Congress to apply the clarification to taxpayers based on the date of their administrative claims, as opposed to the date of their blending activities. The district court in *Valero* properly rejected that argument as well. *Id.* at 12-14.

The date selected by Congress was rational because it is within the period for which the credit was revived. Barring claims made after January 8, 2018, primarily precludes claims for

–15–

substances mixed during the period for which Congress had just revived the credit in the same piece of legislation, *i.e.,* 2018 and 2019. The distinction rationally accomplishes the policy of Congress no longer to incentivize the use of those substances for the alternative fuel mixture credit in § 6426(e), as opposed to the alternative fuel credit in § 6426(d). Nor is it the role of the Court to question the correctness of that policy choice by Congress. "[J]udgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Carlton*, 512 U.S. at 30-31.

It was also rational for Congress "to bar claims for blending activities that occurred prior to January 8, 2018, but that were not claimed until after that time and had not yet been paid at the time of the 2019 clarification amendment." *Valero* Order at 13. It was appropriate to tie application of the clarification to the publication date of Revenue Ruling 2018-2, which had "put[] taxpayers on notice that a mixture of butane and gasoline does not qualify for the credit." 165 Cong. Rec. S7185. No taxpayer filing such a claim after January 8, 2018, could have had a reasonable expectation that the credit would be allowed. Moreover, considering the prevalence of taxpayers filing retroactive amended returns to obtain a *post hoc* windfall for activities they were already engaging in (*see* H.R. Rep. 116-379 at 61-62), it was rational for Congress to apply the clarification to such claims. Nor was it arbitrary for Congress to distinguish between claimants filing claims promptly after allegedly performing the incentivized activity and those who filed belated claims seeking an after-the-fact windfall.[6]

---

[6] Plaintiff's attempt (at 12) to distinguish between three hypothetical "groups of taxpayers" is unpersuasive. It was hardly irrational for Congress to decline to apply the clarification to claims made prior to January 8, 2018, the date that Revenue Ruling 2018-2 had advised the public that the blending of butane into gasoline did not qualify for the credit. Nor was it arbitrary for Congress to decline to apply the clarification to taxpayers whose claims the IRS had already paid.

PES is also wrong that Congress acted irrationally "by arbitrarily shortening the statute of limitations . . . for filing refund claims." (PES Resp. at 12.) The clarification to § 6426(e) imposed effective dates on the application of a *substantive* legal clarification, and it did not alter the three-year statute of limitations for filing an administrative claim. And, for blending of butane allegedly performed in 2017 by PES and other gasoline producers, Congress did not "eviscerate[] any opportunity for refund claims not filed with the IRS by January 8, 2018," as PES suggests (at 12-13). Neither PES nor any other taxpayer could have made administrative claims prior to January 8, 2018, for blending activities allegedly performed in 2017, because the alternative fuel mixture credit for 2017 had not been retroactively reinstated until February 2018.

Tax credits such as the alternative fuel mixture credit are "a matter of legislative grace." *Sunoco, Inc. v. United States*, 129 Fed. Cl. 322, 331 (2016) (quoting *Schumacher v. United States*, 931 F.2d 650, 652 (10th Cir. 1991)), *aff'd*, 908 F.3d 710 (Fed. Cir. 2018); *see also Shami v. Commissioner*, 741 F.3d 560, 567 (5th Cir. 2014). Moreover, "tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *Carlton*, 512 U.S. at 34. Overall, no fewer than six times, Congress retroactively revived the alternative fuel mixture credit—often after the close of the tax year—to allow taxpayers to claim the credit. At the same time, it was rational for Congress to retroactively clarify the rules regarding the alternative fuel mixture credit to better reflect Congressional intent.

**CONCLUSION**

For the reasons explained above, the Court should grant defendant's motion for judgment on the pleadings on Counts Thirteen through Sixteen of the Amended Complaint.

Respectfully submitted,

January 28, 2020

*s/ Jason Bergmann*
JASON BERGMANN
Attorney of Record for Defendant
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Washington, D.C. 20044
Tel: (202) 616-3425
Fax: (202) 514-9440
jason.bergmann@usdoj.gov

DAVID A. HUBBERT
    Deputy Assistant Attorney General
DAVID I. PINCUS
    Chief, Court of Federal Claims Section
G. ROBSON STEWART
    Assistant Chief, Court of Federal Claims Section

January 28, 2020

*s/ G. Robson Stewart*
Of Counsel