IN THE UNITED STATES COURT OF FEDERAL CLAIMS

———————

No. 19-510 T

(Judge Edward H. Meyers)

PHILADELPHIA ENERGY SOLUTIONS REFINING AND MARKETING, LLC,

Plaintiff,

v.

UNITED STATES,

Defendant.

—————

**REPLY IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT**

—————

DAVID A. HUBBERT
  Acting Assistant Attorney General

DAVID I. PINCUS
G. ROBSON. STEWART
JASON BERGMANN
COURTNEY M. HUTSON
PATRICK PHIPPEN
  Attorneys
  Justice Department (Tax)
  Court of Federal Claims Section
  P.O. Box 26
  Ben Franklin Post Office
  Washington, D.C. 20044
  (202) 616-3425
  (202) 514-9440 (E-Fax)
  jason.bergmann@usdoj.gov

## TABLE OF CONTENTS

Page

**INTRODUCTION AND SUMMARY OF ARGUMENT** ............................................................ 1

**ARGUMENT** ........................................................................................................................... 4

    A.    Butane is a "taxable fuel" and not an "alternative fuel" with respect to the alternative fuel mixture credit under § 6426(e) ...................................................... 4

        1.    Butane is not simultaneously a "taxable fuel" and an "alternative fuel" .......... 5

        2.    The counterarguments by PES are unpersuasive ............................................. 10

    B.    "Liquefied petroleum gas" in § 6426(d)(2) refers to the specific substance called propane autogas, *not* to a broad category of gases that includes butane .......... 13

    C    The "blending butane" used by PES contained heavy hydrocarbons and did not qualify as "liquefied petroleum gas" under fuel-industry specifications ............... 19

**APPENDIX OF EXHIBITS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Commerce v. Tenn.*, 161 U.S. 134 (1896) ................................................................ 9, 19

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) ............................................................ 20

*Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1994) ....... 8

*Corning Glass Works v. Brennan*, 417 U.S. 188 (1974) ........................................................... 18

*First Chicago NBD Corp. v. Commissioner*, 135 F.3d 457 (7th Cir. 1998) ........................ 8-9

*King v. Burwell*, 576 U.S. 473 (2015) ........................................................................................ 3

*Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*, 844 F.3d 1334 (Fed. Cir. 2016) ..... 3

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .......................................................................... 8

*Smith v. Brown*, 35 F.3d 1516 (Fed. Cir. 1994) ......................................................................... 3

*Sunoco, Inc. v. United States*, 129 Fed. Cl. 322 (2016), *aff'd*, 908 F.3d 710
    (Fed Cir. 2018), *cert. denied*, 140 S. Ct. 46 (2019) ............................................ 2, 2n, 9, 19

*Sunoco, Inc. v. United States*, 908 F.3d 710 (Fed. Cir. 2018),
    *cert. denied*, 140 S. Ct. 46 (2019) .................................................................................... 6n

*U.S. Venture, Inc. v. United States*, 448 F. Supp. 3d 979 (E.D. Wis. 2020),
    *appeal pending*, No. 20-1861 (7th Cir.) ...................................................................... 1, 5, 11

*United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200 (2001) ................................... 8

*United States v. Stewart*, 311 U.S. 60 (1940) ............................................................................ 9

*United States v. Williams*, 553 U.S. 285 (2008) ...................................................................... 15

*Vitol v. United States*, No. H-18-2275, 2020 WL 1442136 (S.D. Tex. Feb. 25, 2020),
    *report and recommendation adopted by* 2020 WL 1466121 (Mar. 24, 2020),
    *appeal pending*, No. 20-20237 (5th Cir.). ...................................................................... 5, 8

*Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1 (2001) ................................................... 8

*Whitman v. American Trucking Associations*, 531 U.S. 457 (2001) .......................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):
§ 40A ........................................................................................................... 11
§ 4041 ......................................................................................................... 11
§ 4083 ....................................................................................................*passim*
§ 6426 ....................................................................................................*passim*

Alternative Motor Fuels Act, P.L. No. 100-494, 102 Stat. 2441 (1988) ................................. 1n

Cal. Veh. Code § 380 ..................................................................................................... 13n

Clean Air Act Amendments of 1990, P.L. No. 101-549, 104 Stat. 2399 (1990) ................... 1n

Energy Policy Act of 1992, P.L. No. 102-486, tit. III, 106 Stat. 2776 (1992) ...................... 1n

Omnibus Budget Reconciliation Act of 1987, P.L. No. 100-203, 101 Stat. 1330 (1987) ....... 1n

**Legislative Authorities:**

151 Cong. Rec. 9668 (2005) ............................................................................................ 1n

165 Cong. Rec. S7185 (daily ed. Dec. 19, 2019) ......................................................... 2, 4, 9n

H.R. Rep. 109-203 (2005) (Conf. Rep.) ..................................................................... 2n, 7, 18

H.R. Rep. 116-379 (2020) ......................................................................................... 1, 1n

Joint Comm. on Tax'n, *Description of the "Energy Policy Tax Incentives Act of 2005,"* JCX-44-05, at 45-47 (2005) ................................................................... 2n

Joint Comm. on Tax'n, *Gen'l Explanation of Tax Legislation Enacted in the 109th Congress*, JCS-1-07, at 91-93 (2007) .......................................................... 2n

Joint Comm. Tax'n, *Description of the Chairman's Mark of a Proposal to Convert the Tax on Liquefied Natural Gas and Liquefied Petroleum Gas to an Energy Equivalent Basis* (2015) ........................................................................... 19n

Joint Comm. on Tax'n, Memorandum (Nov. 20, 2019) ....................................................... 2n

**TABLE OF AUTHORITIES**

**Page(s)**

**Administrative Authorities:**

Treasury Regulations (26 C.F.R.):

§ 48.4041-8 .................................................................................................. 7, 7n, 12

§ 48.4081-1 ................................................................................................... 4n, 12

26 C.F.R. § 48.4041-7(f)(1)(i) (1961) ................................................................. 7n

24 C.F.R. § 3280.702 ........................................................................................ 13n

33 C.F.R. § 127.005 .......................................................................................... 13n

Notice 2006-92, 2006-2 C.B. 774, 2006 WL 2792807, § 6(a) (2006) ...................... 7

Notice 2007-37, 2007-1 C.B. 1002, 2007 WL 964631, § 2(a)(3)(i) (2007)............. 11

Rev. Rul. 88-70, 1988-2 C.B. 338 (1988) ............................................................. 4n

Rev. Rul. 2018-2, 2018-2 I.R.B. 277, 2017 WL 6389843 (2018)............................. 5

57 Fed. Reg. 32424 (1992) .................................................................................. 4n

**Industrial and Technical Authorities:**

Alternative Fuels Data Center, Dep't of Energy, *Propane Fuel Basics* .......................... 10n, 14

American Petroleum Institute, Manual of Petroleum Measurement Standards,
   Chapter 1 .................................................................................................. 13n

ASTM International, D1835, *Standard Specification for Liquefied Petroleum
   (LP) Gases* ................................................................................................. 20

N. Berglin, et al., *Preliminary Economics of Black Liquor Gasification with
   Motor Fuels Production* (2003).................................................................... 16n

C.P. Cho et al., *Effects of the sulfur content of liquefied petroleum gas on
   regulated and unregulated emissions from liquefied petroleum gas vehicle*,
   137 Fuel 328 (2014) .................................................................................... 17

Encyclopedia Britannica, *Petroleum* (Aug. 12, 2019)...................................... 11-12

**TABLE OF AUTHORITIES**

**Page(s)**

**Industrial and Technical Authorities (continued):**

Energy Information Admin., Dep't of Energy, *Glossary* ..................................................12, 13

Energy Information Admin., Dep't of Energy, FAQs, *What is the Difference Between Crude Oil, Petroleum Products, and Petroleum?* ...............................................12

Gas Processors Ass'n, GPA 2140, *Standard for Liquid Petroleum Gas Specifications and Test Methods* .............................................................................13n, 20

Green Car Congress, "New 3-step process for conversion of kraft lignin from black liquor into green diesel" (2016) .............................................................16n

William L. Leffler, Natural Gas Liquids: A Nontechnical Guide (2014) ............12, 13, 16, 17

William L. Leffler, Petroleum Refining in Nontechnical Language (4th ed. 2008) ..............13

Nat'l Propane Gas Ass'n, An Assessment of Propane as an Alternative Transportation Fuel in the United States (June 1989) ......................................................17

Oak Ridge Nat'l Labs, Dep't of Energy, Data Transp. Energy Data Book, Table B.4, Heat Content for Various Fuels (Edition 32) (2013) ......................................19

Office of Energy Efficiency & Renewable Energy, Dep't of Energy, *State & Alternative Fuel Provider Fleets: Key Transportation Terminology* ..............................15

System Aspects of Black Liquor Gasification, "Black Liquor Gasification with Motor Fuel Production," (Swedish Energy Agency 2008) ...................................16n

U.S. Dep't of Trans., *Fuels and Vehicle Technology* ........................................................5, 15

Western Propane Gas Ass'n, *Life Cycle Analysis of LPG Transportation Fuels under the Californian LCFS*, at 3-4 (2017) ....................................................17n

**Other Authorities:**

American Heritage Dictionary (4th ed. 2000) .........................................................................5

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012) ...............................................................................................................15

McGraw-Hill Dictionary of Scientific and Technical Terms 1217 (6th ed. 2002) ..............13n

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is one of many fronts in a war by the gasoline industry to obtain a multi-billion-dollar tax windfall. Plaintiff ("PES") seeks over $550 million of tax credits based on claims that it blended butane into gasoline. Butane is a gasoline blend stock and has been a standard gasoline component for decades. PES essentially seeks a massive "alternative fuel mixture" subsidy for producing traditional gasoline. But there is nothing *alternative* about traditional gasoline, whose production Congress wanted to supplant with alternative fuels and alternative fuel mixtures.

Congress enacted the alternative fuel mixture credit "to encourage and incentivize the production of alternative fuels." *U.S. Venture, Inc. v. United States*, 448 F. Supp. 3d 979, 983 (E.D. Wis. 2020), *appeal pending*, No. 20-1861 (7th Cir.). Congress wanted to "reduce U.S. reliance on conventional gasoline, diesel, and kerosene." H.R. Rep. 116-379 at 61 (2020) [Ex. 41]. Congress did not "intend to incentivize the production of butane mixed with gasoline, or traditional gasoline." *Venture*, 448 F. Supp. 3d at 983. To subsidize traditional gasoline in that manner would only make it more difficult for alternative fuels to compete with traditional gasoline in the marketplace, frustrating the energy policies that Congress wanted to advance.[1]

---

[1] Congress has recognized that the reliance of the United States on gasoline harms public health and jeopardizes our energy security. *See, e.g.,* Omnibus Budget Reconciliation Act of 1987, P.L. No. 100-203, § 1508, 101 Stat. 1330-29 (1987). To address those concerns, Congress enacted a "suite of incentives" over the years "to reduce U.S. reliance" on traditional fuels. H.R. Rep. 116-379 at 61 (2020). These included numerous efforts to expand the "commercial application and consumer acceptability" of "clean-burning nonpetroleum transportation fuels" so that alternative fuels could "compete with petroleum-based fuels." Alternative Motor Fuels Act, P.L. No. 100-494, 102 Stat. 2441 (1988); *see also* Energy Policy Act of 1992, P.L. No. 102-486, tit. III, 106 Stat. 2776, 2866 (broadening manufacturing incentives for cars running on alternative fuel); Clean Air Act Amendments of 1990, P.L. No. 101-549, § 182(c)(4)(A), 104 Stat. 2399, 2434 (seeking to make "clean alternative fuels . . . economic from the standpoint of vehicle owners"). In the same vein, to further the "obvious goal in a lot of our energy legislation" of "reducing our domestic dependence upon oil dedicated to our transportation sector," Congress enacted the alternative fuel and alternative fuel mixture credits to "encourage . . . domestic alternative fuels" in addition to ethanol and biodiesel. 151 Cong. Rec. 9668 (2005) [Ex. 58].

If, as PES suggests, Congress had intended to provide a multi-billion-dollar subsidy for the use of butane in the production of traditional gasoline, "one would expect to see some inkling of this intent in the legislative history or in the Internal Revenue Code." *See Sunoco, Inc. v. United States*, 129 Fed. Cl. 322, 331 (2016) (denying refund claims relating to the alcohol fuel mixture credit under § 6426(b)), *aff'd*, 908 F.3d 710 (Fed Cir. 2018), *cert. denied*, 140 S. Ct. 46 (2019). No such inkling appears.[2] Indeed, as Senator Grassley explained, "if anyone had thought oil companies could qualify for this credi[t] [for activities] they already engaged in, the credit would never have been enacted." 165 Cong. Rec. S7185 (daily ed. Dec. 19, 2019) [Ex. 42]. That is because "the Joint Committee on Taxation's revenue score associated with the provision would have been so large that its passage wouldn't have been feasible." *Id.*[3]

PES says (at 4) that neither the policy underlying the tax credit nor the intent of Congress is of any relevance because the "plain language of section 6426" supports its interpretation of the tax credit. But PES distorts the plain-meaning rule, which requires courts to do more than merely consider dictionary definitions of statutory terms in isolation. Even the most fervent textualists look beyond the dictionary and examine the contexts in which words are used and the structures

---

[2] *See, e.g.,* Joint Comm. on Tax'n, *Description of the "Energy Policy Tax Incentives Act of 2005,"* JCX-44-05, at 45-47 (2005) [Ex. 59]; H.R. Rep. 109-203 at 1118-1121 (Conf. Rep.) (2005) [Ex. 47]; Joint Comm. on Tax'n, *Gen'l Explanation of Tax Legislation Enacted in the 109th Congress*, JCS-1-07, at 91-93 (2007) [Ex. 60].

[3] When Congress enacted the alternative fuel and alternative fuel mixture credits in 2005, the Joint Committee projected that the credits would cost $162 million for fiscal year 2007 and $175 million for fiscal year 2008. [Ex. 61]. When Congress revived and extended those credits for later years, the Joint Committee projected that they would cost $176 million for fiscal year 2011, $305 million for fiscal year 2013, $397 million for fiscal year 2015, $794 million for fiscal year 2016, and $555 million for fiscal year 2018. [Exs. 62-66]. Those revenue scores pale when compared with the billions that taxpayers now seek in butane-related alternative fuel mixture claims for tax years 2013 through 2017. Joint Comm. on Tax'n, Nov. 20, 2019 Memo. at 1 [Ex. 43]. Notably, in *Sunoco*, 129 Fed. Cl. at 330, the Court relied on Joint Committee revenue scores to conclude that "Congress did not believe . . . that it was giving a drastically increased subsidy to alcohol fuel blenders."

of the statutes in which they appear. As the Federal Circuit confirmed: "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*, 844 F.3d 1334, 1338 (Fed. Cir. 2016) (internal quotations omitted) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

The argument by PES rests entirely on dictionary and petroleum-industry definitions of the plural term "liquefied petroleum gases," which PES claims establish a plain meaning that the Court is constrained to apply. However, meanings that may seem plain "when viewed in isolation" may be "untenable" in light of the statute as a whole." *King v. Burwell*, 576 U.S. 473, 497-98 (2015) (quoting *Department of Revenue of Ore. v. ACF Industries, Inc.*, 510 U.S. 332, 343 (1994)). Courts must not apply the plain-meaning rule "in isolation, torn from the context of the surrounding provisions," or "the structure of the code." *Smith v. Brown*, 35 F.3d 1516, 1522-23 (Fed. Cir. 1994). That is precisely what PES asks the Court to do.

Here, both context and statutory structure confirm that the blending of butane into gasoline does not qualify for the alternative fuel mixture credit. When considered in the context of § 6426(d)(2), which defines "alternative fuel," the *singular* "liquefied petroleum gas" clearly connotes the specific alternative fuel known as propane autogas, and not a *plural* group of hydrocarbon gases that includes butane. Likewise, the structure of the Internal Revenue Code makes clear that butane cannot be an "alternative fuel" for § 6426(e); butane has long been included within the statutory and regulatory definition of gasoline, and it is therefore a "taxable fuel" within the meaning of § 4083(a)(1)(A) and § 6426(e)(2). The argument that § 6426(e) plainly contemplated an allowance of alternative fuel mixture credits for the blending of butane into gasoline cannot be reconciled with the fact that Congress specifically chose to cross-

reference § 4083(a)(1)(A) in § 6426(e)(2). Nor can it be reconciled with the fact that gasoline producers waited "more than 10 years to start claiming the credit for doing what they ha[d] been doing for" decades, 165 Cong. Rec. S7185.

There are three independent grounds on which the Court should enter summary judgment for the United States. Two are legal, and one is factual. *First*, butane is a gasoline blend stock and a "taxable fuel." It cannot also be an "alternative fuel" in accord with the longstanding exclusion of taxable fuels from the scope of alternative fuels under the Internal Revenue Code. *Second*, in the context of alternative fuel, "liquefied petroleum gas" refers to a substance called "propane autogas," a particular fuel in the United States. Butane is not propane autogas, nor is butane an alternative fuel in the United States. And, *third*, PES has not met its factual burden of showing that the "blending butane" it mixed into gasoline qualified as liquefied petroleum gas under the petroleum-industry specifications it cited to define the term. Defendant will elaborate on each of those three arguments, below.

## ARGUMENT

### A.   Butane is a "taxable fuel" and not an "alternative fuel" with respect to the alternative fuel mixture credit under § 6426(e).

In the years at issue, § 6426(e)(2) defined an "alternative fuel mixture" as "a mixture of alternative fuel and taxable fuel (as defined in subparagraph (A), (B), or (C) of [§] 4083(a)(1))." PES does not dispute that butane is a gasoline blend stock and therefore a "taxable fuel" under § 4083(a)(1).[4] Because butane and the other gasoline blend stocks with which PES allegedly mixed butane are all "taxable fuels," PES did not produce an alternative fuel mixture.

---

[4] Section 4083(a)(1)(A) defines "taxable fuel" to include "gasoline." "Gasoline," in turn, includes "any gasoline blend stock" that is a "petroleum product component of gasoline," to the extent prescribed in regulations. § 4083(a)(2)(B). Treasury identified butane as a blend stock in 1988 and issued regulations to that effect in 1992. Rev. Rul. 88-70, 1988-2 C.B. 338 (1988) [Ex. 49]; 57 Fed. Reg. 32424 (1992) (codified at Treas. Reg. § 48.4081-1(c)(3)(i)(B) [Ex. 50]).

1.      **Butane is not simultaneously a "taxable fuel" and an "alternative fuel."**

As the IRS explained in Revenue Ruling 2018-2, 2018-2 I.R.B. 277, 2017 WL 6389843 (2018) [Ex. 44], a "mixture of butane, a taxable fuel, with gasoline, a taxable fuel, is a mixture of two taxable fuels, not a mixture of a taxable fuel and an alternative fuel, as required by § 6426(e)(2)." In *Venture*, 448 F. Supp. 3d at 983, based on "a complete reading of the statutory scheme," the district court rejected the taxpayer's argument that butane can "be both an alternative fuel and a taxable fuel." The district court in *Vitol* reached the same conclusion: "Congress could not have intended for butane to be both an alternative fuel and a taxable fuel within the definition of an alternative fuel mixture." *Vitol v. United States*, No. H-18-2275, 2020 WL 1442136, at *3 (S.D. Tex. Feb. 25, 2020), *report and recommendation adopted by* 2020 WL 1466121 (Mar. 24, 2020), *appeal pending*, No. 20-20237 (5th Cir.).

Contrary to the revenue ruling and the two district court opinions, PES argues (at 5-6) that butane qualifies "as an alternative fuel under section 6426 even though it is sometimes a taxable fuel" under § 4083. But § 6426 nowhere provides that a substance may qualify as both an alternative fuel and taxable fuel for the purpose of the credit. Indeed, treating the same substance as both a taxable fuel and alternative fuel would be contrary to the common meaning of the word "alternative." *See* American Heritage Dictionary at 54 (4th ed. 2000) [Ex. 54] (defining "alternative" as "the choice between two mutually exclusive possibilities"). Likewise, because butane is a gasoline blend stock, and it has been so for decades, butane is a traditional fuel that does not qualify as an "alternative fuel" under the generally understood definition of that term. *See* U.S. Dep't of Trans., *Fuels and Vehicle Technology* [Ex. 36]; Eggert Depo.152:9-14 (stating petroleum industry definition of "alternative fuel" as "something different than a typical fuel").

PES is wrong to try and divorce the meaning of the terms "taxable fuel" and "alternative fuel" in § 6426 from the meaning of those terms in the excise-tax statutes, §§ 4041 & 4081. Its

-5-

attempt ignores the fact that § 6426(e) expressly incorporates the definition of "taxable fuel" from § 4083(a)(1), and the alternative fuel mixture credit cannot be properly understood without that reference. PES is indifferent to both the longstanding exclusion of taxable fuels from the scope of alternative fuels under the Internal Revenue Code and the integral link between the tax credits (§ 6426(d), (e)) and the excise taxes against which those credits are allowed (§§ 4041 and 4081). In particular, PES disregards that:

- The alternative fuel credit under § 6426(d) is allowed against the excise tax under § 4041, and the alternative fuel mixture credit under § 6426(e) is allowed against the excise tax under § 4081, and those tax credits and related fuel excise taxes are designed to operate together.[5]

- For almost seventy years, § 4041(a)(2) identified "alternative fuels" and "special motor fuels" by reference to fuels that are not taxable under § 4081, establishing that the two types of fuel are mutually exclusive.

- For almost seventy years, § 4041 referred to "liquefied petroleum gas" as an alternative fuel or special motor fuel, establishing that the term does not encompass taxable fuels. *See* § 4041(a)(2)(A), (B)(ii) (current codification).

Moreover, the exclusion of taxable fuels from the scope of alternative fuels under § 6426 is fully consistent with Treasury's longstanding administrative distinction between taxable fuels, on the one hand, and special-motor/alternative fuels on the other. Since 1960, Treasury regulations have consistently excluded fuels taxable under § 4081 from the scope of special-

---

[5] Similar to other tax credits in the Internal Revenue Code, the various credits in § 6426 are "applied 'against'" the fuel excise taxes in §§ 4041 and 4081, and they "work[] to reduce the taxpayer[s'] overall excise-tax liability." *Sunoco, Inc. v. United States*, 908 F.3d 710, 716 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 46 (2019). The symbiotic relationship between the tax credits and the fuel excise taxes is further shown by the facts that: (1) when Congress enacted the alternative fuel and alternative fuel mixture credits in 2005, it renamed "special motor fuels" in § 4041(a)(2) to "alternative fuels" to align the two terms; and (2) after Congress changed how the fuel excise tax on liquefied petroleum gas was calculated under § 4041(a)(2)(B) in 2015, it made a corresponding amendment to § 6426, to ensure that the credits involving liquefied petroleum gas would be determined in the same manner. § 6426(j)(1).

-6-

motor/alternative fuels. *See* Treas. Reg. § 48.4041-8(f)(1) & (2) [Ex. 48] (current codification).[6]

And since 1992, Treasury regulations have identified "butane" as a "gasoline blend stock" that is

taxable under § 4081. *See* Treas. Reg. § 48.4081-1(c)(3)(i)(B) [Ex. 50]; § 4083(a)(2)(B)(i).

These regulations provided context for the 2005 enactment of the alternative fuel mixture

credit—context recognized by the Conference Report to the 2005 law enacting the credit. *See*

H.R. Rep. 109-203 at 1119, 1215-1216 & n.300 (Conf. Rep.) (2005) (recognizing that "special

motor fuels" do not include "any product taxable under section 4081" and noting that "butane" is

a "gasoline blend stock" and thus "gasoline," a "taxable fuel").

Shortly after Congress enacted the new tax credits in 2005, Treasury published Notice

2006-92, 2006-2 C.B. 774, 2006 WL 2792807, § 6(a) (2006) [Ex. 51], which confirmed—in the

context of the alternative fuel mixture credit—that "alternative fuel" means something "other

than" a "taxable fuel." The notice made no exception for butane or any other gasoline blend

stock. Together with the regulations discussed above, Notice 2006-92 provided context for the

seven reenactments of the alternative fuel mixture credit, including the reenactments relied on by

PES in its refund claims filed in 2017 and 2018. As the Supreme Court made clear, "Treasury

regulations and interpretations long continued without substantial change, applying to

---

[6] PES is wrong (at 8-9 n.6) that the regulation provides a "definition of 'liquefied petroleum gas' as including 'butane.'" While the 1960 regulation did include the parenthetical "(such as propane, butane, or pentane, or mixtures of the same)" after the term "liquefied petroleum gases," PES failed to mention that the parenthetical was limited by paragraph (f)(2). *See* 26 C.F.R. § 48.4041-7(f)(1)(i) (1961). Properly read with paragraph (f)(2), the 1960 regulation signified that, for the purpose of § 4041, LPGs included butane unless butane was subject to tax under § 4081. Congress thereafter subjected butane to tax under § 4081 when it expanded the definition of "gasoline" to include "any gasoline blend stock," *i.e.,* "any petroleum product component of gasoline." § 4083(a)(2)(B)(i) & flush language. Notably, when Treasury last amended the regulation in 1995, it reinforced the primacy of paragraph (f)(2) by inserting the clause "Except as provided in paragraph (f)(2) of this section" before the definition of "special motor fuel" in paragraph (f)(1). *See* Treas. Reg. § 48.4041-8(f).

unamended or substantially reenacted statutes, are deemed to have received Congressional approval and have the effect of law." *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 (2001) (quoting *Cottage Sav. Ass'n v. Commissioner*, 499 U.S. 554, 561 (1991)).

PES tries (at 7-10) to discount Treasury's longstanding administrative position because the relevant regulations were promulgated under the fuel-excise tax statutes, rather than under § 6426(e). But Congress expressly incorporated the definition of taxable fuel from § 4083 when it enacted the alternative fuel mixture credit. *See* § 6426(e)(2). If Congress had intended a different definition of taxable fuel—one that did not include gasoline blend stocks like butane— it would not have made the cross-reference. Moreover, both Notice 2006-92 and Revenue Ruling 2018-2 directly interpreted § 6426(e), each applying the fuel-excise tax regulations to the definitions of taxable fuel and alternative fuel in the tax-credit statute.

PES argues (at 12 n. 8) that the Court should not "rely on Revenue Ruling 2018-2 as persuasive" because it "does not have the force of law." But the United States does not contend that the ruling is entitled to deference under *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1994), as PES suggests. In the Federal Circuit, *Chevron* deference does not apply to revenue rulings. Rather, revenue rulings are "entitled to some weight as reflecting the Commissioner's interpretation," but they "do not have the same force as a regulation." *Vons Cos., Inc. v. United States*, 51 Fed. Cl. 1, 8 (2001) (quoting *Spang Indus., Inc. v. United States*, 791 F.2d 906, 913 (Fed. Cir. 1986)). If the Court were to determine that § 6426 is ambiguous, then it should follow the reasoning of Revenue Ruling 2018-2, as the district court did in *Vitol*, 2020 WL 1442136 at *3-5. As that court explained, the ruling "is reasonable, thorough, and not inconsistent with prior IRS pronouncements," and, as such, is entitled to "significant weight" under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). *See also First*

*Chic. NBD Corp. v. Commissioner*, 135 F.3d 457, 459-60 (7th Cir. 1998) (giving "some weight" to IRS "views about the meaning and application of tax laws," even where revenue ruling was issued to address question raised in a tax dispute).[7]

Based on the context and structure of both § 6426 and the fuel-excise tax provisions, the Code plainly provides that butane may not be both a taxable fuel and alternative fuel. If the Court disagrees and finds the statute ambiguous, the Court should favor the government's interpretation nonetheless. "On a fundamental level, courts expect Congress to speak unequivocally when it intends to confer tax benefits on the scale that" PES suggests. *Sunoco*, 129 Fed. Cl. at 331. Tax credits and other benefits provided in the Code are matters of legislative grace and, as such, must be construed narrowly and be allowed only where clearly provided for. *See id.* (quoting *Schumacher v. United States*, 931 F.2d 650, 652 (10th Cir. 1991)). Taxpayers must prove more than doubt or ambiguity in the law, but must rather present a clearly defined entitlement founded on the plain language of a statute. *See United States v. Stewart*, 311 U.S. 60, 71 (1940); *Bank of Commerce v. Tennessee*, 161 U.S. 134, 146 (1896). As Justice Scalia cautioned, Congress does not make fundamental changes using "vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Here, PES asks the Court to find a very large elephant in a very small mousehole.

_____

[7] PES argues (at 11-12) that the failure of Congress to amend § 6426(e) to align with Revenue Ruling 2018-2 "shows a deliberate choice" not to exclude butane from the credit's definition of "alternative fuel." Nonsense. Congress believed that the ruling was a "correct" interpretation of the statute as written, 165 Cong. Rec. S7185, and there was no need for it to amend or clarify the statute. It was only after taxpayers such as PES persisted in their claims, and subsequently filed lawsuits such as this case, that Congress recognized the potential need for a statutory clarification, which it enacted in December 2019 to remove any conceivable statutory predicate for the erroneous tax-credit-scheme promotion.

### 2.      The counterarguments by PES are unpersuasive.

In response to the government's arguments based on context and structure that butane may not be an alternative fuel because it is instead a taxable fuel, PES essentially plays an extended game of "what if?" What if Congress had "excluded butane from the definitions of 'liquefied petroleum gas' or 'alternative fuel'?" (Dkt. 81-1 at 1.) Or what if Congress had "specified 'propane' in the definition of 'alternative fuel' in section 6426(d)(2) instead of liquefied petroleum gas?"[8] (*Id.* at 2.) But that is a game both sides can play. What if Congress had specifically identified butane in § 6426(d)(2) as a substance constituting an alternative fuel? Or what if Congress had expressly provided that a substance could qualify as both a taxable fuel and alternative fuel under § 6426(e)? Congress did neither. While the relevant statutes might have been clearer if Congress had drafted them differently, with foreknowledge of the mischief that gasoline producers are now attempting, the Court must interpret the provisions that Congress enacted, not some counterfactual legislation that a creative litigant might imagine.

Any omission of butane from the flush language of § 6426(d)(2) is unimportant. The language lists certain fuels that would otherwise qualify as alternative fuels under § 6426(d)(2) but are specifically excluded.[9] Unlike butane, none of those listed fuels are expressly included within the definition of "gasoline" or any other "taxable fuel." It would be redundant to include butane on that list, because it was already excluded from the scope of alternative fuels as a fuel

---

[8] Section 6426(d)(2) refers to "liquefied petroleum gas" instead of "propane," because the LPG specifications in the United States provide that HD-5 propane may include small amounts of propylene, butane and butene. Alternative Fuels Data Center, Dep't of Energy ("AFDC"), *Propane Fuel Basics* [Ex. 29].

[9] Congress originally excluded ethanol, methanol, and biodiesel because those fuels were subject to pre-existing credit provisions. It later added "fuel . . . derived from the production of paper or pulp" to the flush language to provide that the fuel known as black liquor also would not qualify for the alternative fuel and alternative fuel mixture credits. § 6426(d).

that is taxable under § 4081. The fact that butane is not listed does not help PES.

Moreover, PES is simply wrong (at 6-7) that the inclusion of "liquid fuel . . . derived from coal (including peat) through the Fischer-Tropsch process" as an "alternative fuel" under § 6426(d)(2)(E) shows that a substance may be both a taxable fuel and alternative fuel. Unlike butane, no statute or regulation classifies Fischer-Tropsch fuels as taxable fuel. Notably, PES fails to cite any occasion when the IRS has treated Fischer-Tropsch fuels derived from coal as taxable under § 4081. Nor could PES point to any such occasion, given that the Code expressly provides for the taxation of "any liquid fuel . . . derived from coal (including peat)" as an alternative fuel under § 4041(a)(2)(B)(iii).

PES is also wrong (at 6) that "renewable diesel" shows that substances may receive "dual treatment" without express Congressional authorization for such treatment. "Renewable diesel" constitutes "diesel fuel" and is taxable under § 4081. Notice 2007-37, 2007-1 C.B. 1002, 2007 WL 964631, § 2(a)(3)(i) (2007). However, Congress provided that renewable diesel shall be treated in the same manner as "biodiesel" for purpose of the biodiesel mixture credit. *See* §§ 40A(f)(1), 6426(c)(5). Congress expressly provided for the treatment of renewable diesel under two different categories—diesel fuel under § 4083 and biodiesel under §§ 40A and 6426(c). Thus, a substance may be treated under two categories when "Congress authorized such dual treatment," but here, in contrast, there is no such "unambiguous grant from Congress," and thus "the terms 'alternative fuel' and 'taxable fuel' cannot include the same fuels." *Venture*, 448 F. Supp. 3d at 984.

Finally, PES errs when it suggests (at 12-15) that butane derived from natural gas is not a taxable fuel, based on archaic definitions of "petroleum" as crude oil alone, and not natural gas. Gasoline blend stocks such as butane are taxable under § 4083(a) if they are "a petroleum product component of gasoline." In present usage, "petroleum also includes natural gas,"

-11-

Encyclopedia Britannica, *Petroleum* [Ex. 20], a definition with which the Energy Department agrees. Energy Info. Admin., Dep't of Energy ("EIA"), *Glossary* (definitions of "petroleum" & "natural gas plant liquids"). But, even if the word "petroleum" might sometimes exclude natural gas, the phrase "petroleum product"—which appears in § 4083(a)—does not. According to the Energy Department, "[p]etroleum products are obtained from the processing of . . . natural gas" and include "liquefied petroleum gases." EIA, *Glossary* (definition of "petroleum products"); *see also* EIA, FAQs, *What is the Difference Between Crude Oil, Petroleum Products, and Petroleum?* [Ex. 28]. Thus, Treasury regulations expressly contemplate that hydrocarbons "produced in a natural gas processing plant" may be gasoline blend stocks if other requirements are met. Treas. Reg. § 48.4081-1(c)(3)(ii).

Notably, the archaic distinction between crude oil and natural gas also applies to the definition of "liquefied petroleum gases," a fact that PES ignores. If, as PES contends, butane derived from natural gas is not a *petroleum* product because of its origin, then it also would not qualify as a "liquefied *petroleum* gas," but would be a "natural gas liquid" instead. *See* William Leffler, Natural Gas Liquids, a Non-Technical Guide, 5 (2014) [Ex. 22] ("Some people differentiate LPG from NGLs by their origin."). Under the historic definition of "petroleum" for which PES advocates, liquefied petroleum gases would be derived from crude oil by definition, and all would necessarily be taxable fuels. At the same time, butane derived from natural gas would not qualify as liquefied "petroleum" gas, and its blending with other gasoline blend stocks would not qualify for the credit under PES's convoluted argument. Whether derived from crude oil or natural gas, there would be no "variable treatment of butane" as PES suggests (at 12).[10]

---

[10] Defendant agrees that butane derived from biomass is not a "petroleum product of gasoline" and therefore not a taxable fuel under § 4083(a). Such a substance would constitute an alternative fuel for the alternative fuel mixture credit as a "liquid fuel derived from biomass" under § 6426(d)(2)(G), although it would not qualify as liquefied petroleum gas under § 6426(d)(2)(A).

**B.    "Liquefied petroleum gas" in § 6426(d)(2) refers to the specific substance called propane autogas, *not* to a broad category of gases that includes butane.**

The parties identified three potentially relevant definitions of "liquefied petroleum gas," or "LPG." Two come from petroleum-industry sources referenced by PES. **First,** the petroleum industry refers to the *plural* "liquefied petroleum gases," or "LPGs," as a "group of hydrocarbon gases, primarily propane, normal butane, and isobutane, derived from crude oil refining or natural gas processing." EIA, *Glossary* (cited by PES in Dkt. 50-1 at 15).[11] **Second**, when "liquefied petroleum gas" is *singular*, rather than plural, the term identifies particular fuel products containing propane, butane, or mixtures of propane and butane that also satisfy certain other industry specifications. *See* William L. Leffler, Petroleum Refining in Nontechnical Language, 241 (4th ed. 2008) [Ex. 23] (defining "liquefied petroleum gas (LPG)" as "[p]ropane and butane meeting market specifications"); Natural Gas Liquids at 5 (explaining that "LPG (liquefied petroleum gas)" in "the United States . . . means propane meeting market specifications").[12] The petroleum industry contemplates that the "LPG" fuel products will "principally," "predominantly," and "mostly" consist of propane, butane, or their isomers.[13]

---

[11] Relying on "standard and technical dictionaries" and "standard chemistry textbooks," PES argues that "butane is a type of liquefied petroleum gas." (Dkt. 50-1 at 14.) Like the EIA Glossary, these and various petroleum-industry sources contemplate that the *plural* "liquefied petroleum gases" includes a list of hydrocarbon molecules. *E.g.,* ASTM D1835, § 1.1 [Ex. 39] (cited by PES in Dkt. 50-1 at 15).

[12] Although defendant submitted portions of the two Leffler books as Exhibits 22 and 23 to its earlier brief (Dkt. 53-23 & 53-24), defendant encloses revised excerpts from those sources in an Appendix to this Reply. The revised exhibits include additional pages and replace some pages that were partially illegible when earlier submitted.

[13] *E.g.,* McGraw-Hill Dictionary of Scientific and Technical Terms 1217 (6th ed. 2002) ("principally") (cited by PES in Dkt. 50-1 at 14); Am. Petroleum Inst., Manual of Petroleum Measurement Standards, Chapter 1 ("predominantly") (cited by PES in Dkt. 50-22 at 15); GPA Standard 2140 at iii [Ex. 40] ("predominantly") (cited by PES in Dkt. 50-22 at 15); 24 C.F.R. § 3280.702 ("predominantly") (cited by PES in Dkt. 50-22 at 15); 33 C.F.R. § 127.005 ("mostly") (cited by PES in Dkt. 50-22 at 19); Cal. Veh. Code § 380 ("predominantly") (cited by PES in Dkt. 50-22 at 20).

-13-

The government offered a **third** definition. When the singular "liquefied petroleum gas" refers to an alternative fuel in the United States, it has a very specific meaning: *propane autogas*, a common alternative motor fuel. AFDC, *Propane Fuel Basics* [Ex. 29]. HD-5 propane "must consist of at least 90% propane, no more than 5% propylene, and 5% other gases, primarily butane and butylene." (*Id.*) In its earlier brief, defendant cited numerous sources so defining "liquefied petroleum gas" (or "LPG") in the context of alternative fuels. (Dkt. 53 at 36-41.) Ignoring those sources, PES appears not to dispute that this narrower definition applies in the alternative-fuel context. Indeed, PES recognized in 2015 that "LPG" is synonymous with "propane" or "propane autogas" when a member of its senior leadership team proposed that it use propane autogas to power its "refinery light duty vehicles." (Ex. 15 at 69.)

In determining whether the alternative fuel mixture credit should be allowed for a mixture of butane (alleged to be "LPG," and therefore an "alternative fuel") with other gasoline blend stocks ("taxable fuels"), the Court must choose between the three definitions that the parties offered, using statutory-construction tools as a guide. Such tools favor the **third** definition: that "liquefied petroleum gas" refers to propane autogas, a specific alternative fuel.

***Context.*** To understand what Congress meant by "liquefied petroleum gas" in § 6426(d)(2), the Court must not define the phrase in isolation, but should instead consider the context in which the language appears. For example, "Paris" most commonly refers to the capital and most populous city of France. However, if "Paris" were to appear in a list of "cities in Texas," that context would give the word quite a different meaning. The common meaning would be displaced again if "Paris" were listed among the words "Helen," "Hector," "Achilles," "Agamemnon," and "Odysseus"—all mythological characters in *The Iliad*.

-14-

Here, "liquefied petroleum gas" appears in a list defining the term "alternative fuel," and the Court must interpret the phrase in that context. An alternative fuel, "most generally defined, is any fuel other than the traditional selections, gasoline and diesel, used to produce energy and power." *Fuels and Vehicle Technology*. In the specific context of alternative fuel, "liquefied petroleum gas" has a narrow meaning: propane autogas. The Court should view LPG through the prism of alternative fuel, *i.e.,* "the word actually being defined." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012). Likewise, where words "when taken in isolation" are "susceptible to multiple and wide-ranging meanings," the meanings may be "narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Here, "liquefied petroleum gas" appears in a list of other fuels, such as "P Series Fuels," "compressed or liquefied natural gas," and "liquefied hydrogen," § 6426(d)(2)(B), (C), (D), all of which are considered "alternative fuels" in the United States. *See* Office of Energy Efficiency & Renewable Energy, Dep't of Energy, *State & Alternative Fuel Provider Fleets: Key Transportation Terminology* [Ex. 32].[14]

PES argues (at 15-16) that § 6426(d)(2) should not be construed to require an "alternative fuel" to be a "viable motor vehicle fuel" on "its own," because the statute uses the same list of alternative fuels "both for the alternative fuel credit (subsection (d)) and the alternative fuel mixture credit (subsection (e))." But PES has it backwards. Because the statute contemplates that the alternative-fuel list will do double duty, each alternative fuel in the list must be capable of

---

[14] This contextual argument has ample support in the statutory text. Section 6426(d)(2)(A) uses the singular liquefied petroleum gas, rather than the plural liquefied petroleum gas**es**, suggesting that Congress had a particular substance in mind, rather than a category of molecular hydrocarbons. *Compare* § 6426(d)(2)(B) ("P Series Fuels," plural).

supporting *both* credits, and either be used as an alternative transportation fuel (as contemplated by § 6426(d)) or be mixed with a taxable fuel and consumed in the production of energy (as contemplated by § 6426(e)). It is noteworthy that Congress chose to place the alternative-fuel list as a subsection within § 6426(d), which limits its credit to fuels used in motor vehicles, motorboats, or in aviation, rather than in § 6426(e), which does not.[15]

Although PES does not seriously dispute the wealth of sources demonstrating that liquefied petroleum gas in the United States is synonymous with propane autogas (and not butane), it nonetheless argues (at 16-17) that LPG refers to butane because "butane *can* be a motor vehicle fuel" (emphasis in original). True enough, in some European and Asian countries, LPG motor fuels do consist of a mixture of both propane and butane, the proportions of which vary from place to place. But if in certain "parts of the world, LPG includes both propane and butane," "[i]n the United States, LPG means propane meeting market specifications." Natural Gas Liquids at 5. While a draft Australian government report suggests that LPG fuel blends there may contain "up to 60 percent butane," it also recognizes that "in some overseas countries automotive LPG (HD-5 specification) must contain a minimum of 95 percent propane, the balance being butane and butylene." (Dkt. 58-14 at AA-79.) The United States, of course, is one of the "overseas countries" to which the report refers. Notably, in *none* of the countries PES

---

[15] PES (at 15 & n.11) points to tax-credit claims for "black liquor" as proof that alternative fuels need not be used as motor fuels to qualify for the alternative fuel mixture credit under § 6426. However, PES disregards the fact that "black liquor" is an alternative motor fuel and therefore could have qualified for the alternative fuel tax credit under § 6426(d) if it were used to power a motor vehicle, motor boat, or in aviation. *See, e.g.,* System Aspects of Black Liquor Gasification, "Black Liquor Gasification with Motor Fuel Production," at 33-37 (Swedish Energy Agency 2008) [Ex. 67]; N. Berglin et al., *Preliminary Economics of Black Liquor Gasification with Motor Fuels Production* (2003) [Ex. 68]; Green Car Congress, "New 3-step process for conversion of kraft lignin from black liquor into green diesel" (2016) [Ex. 69] (discussing the processing of commercial lignin into "standardized transportation fuels in the future").

identifies may liquefied petroleum gas contain 100% butane, consistent with the definition that PES advocates. That is because butane "may not vaporize" below 32˚F, and propane is thus an essential component to enable vehicles to start in cold weather. Natural Gas Liquids at 5; *see* C.P. Cho et al., 137 Fuel 328 (2014) (noting that, although "the main component of LPG as a vehicular fuel is butane," in Korea, specifications require 15-35% propane "to improve the ability to start the vehicle in the winter") [Ex. 70].[16]

It is also unimportant that, together with propane, butane may have been used as a transportation fuel in the United States in the 1940s and earlier. Natural Gas Liquids at 7-16; *see also* Dkt. 58-15 at AA-83. As a historical matter, butane was phased out "of the U.S. LPG market by the 1950s, effectively making the terms *LPG* and *propane* interchangeable." Natural Gas Liquids at 14 (emphasis in original). As defendant's numerous sources show, liquefied petroleum gas in the United States is now synonymous with propane autogas and was so in 2005 when Congress enacted the alternative fuel mixture credit. Butane "is not used directly as a motor vehicle fuel in the U.S." Nat'l Propane Gas Ass'n, An Assessment of Propane as an Alternative Transportation Fuel in the United States, at 2 (June 1989) [Ex. 26].[17]

**Technical canon of construction**. While courts determine the meaning of ordinary words in a statute according to their ordinary meaning, courts determine the meaning of *technical* terms

---

[16] PES also references (at 17 n.13) a 1995 paper examining the use as transportation fuels in the United States of various propane/butane mixtures. The paper recognized that "liquefied petroleum gas (LPG) is the most widely used alternative fuel in the United States," and that "[t]he primary constituent of LPG used for this purpose is propane." (Dkt. 58-16 at 1644.) The paper determined that the optimum emissions performance was "achieved with the vehicle operating on 100% propane," and that a vehicle fueled by 100% butane failed to meet carbon monoxide emissions standards. *Id.* at 1653.

[17] PES cites a report by the Western Propane Gas Association for its discussion of the "[h]istory of LPG in and [a]round California." But PES neglects to mention that the very next page of the report states: "Propane ($C_3H_8$) is the main component of LPG along with small quantities of butane ($C_4H_{10}$) and propylene ($C_3H_6$)." W. Propane Gas Ass'n, Life Cycle Analysis of LPG Transportation Fuels under the Californian LCFS, at 3-4 (2017) [Ex. 71].

according to their *technical* meaning. *Corning Glass Works v. Brennan*, 417 U.S. 188, 201-02 (1974). This canon of construction "is particularly salutary where . . . the legislative history reveals that Congress incorporated words having a special meaning within the field regulated by the statute." *Id.* at 202. Here, the field regulated by the statute is the alternative-fuel industry, in which "liquefied petroleum gas" has a particular, technical meaning that differs from, and is more narrow than, the definitions on which PES relies.

Here, the legislative history shows that Congress equated liquefied petroleum gas with propane, consistent with the technical meaning of LPG in the alternative-fuel field. In the section discussing the alternative fuel and alternative fuel mixture credits, the Conference Committee Report explained that, under "present law," "special motor fuels" were subject to tax at various rates "determined on an energy equivalent basis" and that the rate for "liquefied petroleum gas (propane)" was 13.6 cents per gallon. H.R. Rep. 109-203 at 1119. The report noted further that "[n]o excise tax credit [wa]s available for the blending or sale of special motor fuels." *Id.* at 1120. The conference agreement that became law raised the excise-tax rate for "liquefied petroleum gas" to 18.3 cents per gallon. *Id.* at 1121. It also "create[d] two new excise tax credits, the alternative fuel credit, and the alternative fuel mixture credit," for which "the term 'alternative fuel' means liquefied petroleum gas," among other things. *Id.* The "liquefied petroleum gas" referred to the discussion of the new tax credits is clearly the same "liquefied petroleum gas (propane)" that the report earlier discussed in the section on "present law." *Id.*[18]

───────────────

[18] It is not correct, as PES argues (at 20), that different definitions of LPG must apply in § 6426(d)(2) and § 4041 because of the phrase "[f]or purposes of this section" in § 6426(d)(2). That phrase ensures that certain limitations in § 6426(d)(2) do not apply to provisions governing alternative fuels elsewhere in the United States Code, such as the exclusion of ethanol, methanol and biodiesel in the flush language of that section. It does not preclude the Court from considering context and structure when resolving this statutory dispute.

When Congress later amended the Code to apply the per-unit tax rate on liquefied petroleum gas to the quantum that is the energy equivalent of gasoline, Congress again equated liquefied petroleum gas with propane.[19] In computing the LPG/gasoline conversion rate, Congress relied on their relative "energy contents" as reported by an Energy Department report, which provided *separate* (and different) energy contents for "liquefied petroleum gas (LPG)" and for "butane." *See* Oak Ridge Nat'l Labs. Data Transp. Energy Data Book, Table B.4, Heat Content for Various Fuels (Edition 32) (2013) [Ex. 55]. Thus, Congress recognized yet again that butane and liquefied petroleum gas are not one and the same.

**Strict construction canon.** Because tax credits are "a matter of legislative grace," PES must show that it is clearly entitled to the alternative fuel mixture credit. *Sunoco*, 129 Fed. Cl. at 331. "[T]here must be no doubt or ambiguity in the language used upon which the claim to the exemption is founded." *Bank of Commerce*, 161 U.S. at 146. For that reason, if the Court were to determine that the term LPG in § 6426(d) may reasonably be interpreted as propane autogas, as the government argues, then the Court must apply that definition here, even if the Court were to believe the interpretation suggested by PES might also be reasonable.

**C.     The "blending butane" used by PES contained heavy hydrocarbons and did not qualify as "liquefied petroleum gas" under fuel-industry specifications.**

Defendant argues that the Court should apply the definition of LPG as propane autogas from the context of alternative fuels. But even if the Court were to apply petroleum-industry definitions, the "blending butane" that PES used to produce CBOBs and RBOBs is not LPG as a factual matter, because it contained massive quantities of pentanes and heavier hydrocarbons.

---

[19] *See* Joint Comm. on Tax'n, *Description of the Chairman's Mark of a Proposal to Convert the Tax on Liquefied Natural Gas and Liquefied Petroleum Gas to an Energy Equivalent Basis*, JCX-32-15, at 2-3 & n.6 (2015) ("Liquefied natural gas (''LNG'') and liquefied petroleum gas (also known as propane) are classified as alternative fuels.").

As explained, the **second** definition discussed in PES's sources requires LPG to "principally," "predominantly," and "mostly" consist of propane and butane. (*See* n.13 above.) Petroleum industry specifications restrict the percentage of "heavier hydrocarbon contaminants" such as pentanes and hexanes to 2.5% for commercial propane and special-duty propane, and to 2.0% for commercial butane and commercial PB mixtures. (*See* ASTM D1835, § 1.1; GPA 2140.) As shown in defendant's earlier brief, PES's "blending butane" was far above that limit.

As the taxpayer affirmatively seeking an allowance of tax credits, PES bears the burden of proving its entitlement to the credit. PES made no effort to meet this burden, incorrectly suggesting (at 27) that the Court should defer this factual question "for trial." But *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), does not allow PES to kick that can down the road. By failing to submit evidence of the components of its "blending butane" in response to defendant's cross-motion, PES may no longer claim that the substance satisfied the petroleum-industry specifications that forbid pentane and other heavy hydrocarbon contamination.

<div style="margin-left:40%">

Respectfully submitted,

</div>

February 22, 2020

<div style="margin-left:40%">

*s/ Jason Bergmann*
JASON BERGMANN
U.S. Department of Justice, Tax Division
Post Office Box 26
Washington, D.C. 20044
Tel: (202) 616-3425
Fax: (202) 514-9440
jason.bergmann@usdoj.gov

DAVID A. HUBBERT
   Acting Assistant Attorney General
DAVID I. PINCUS
   Chief, Court of Federal Claims Section
G. ROBSON STEWART
   Assistant Chief

</div>

February 22, 2020

<div style="margin-left:40%">

*s/ G. Robson Stewart*
Of Counsel

</div>